47 Mass. App. Ct. 519 (1999)                          519

Sturdy Memorial Foundation, Inc. *v.* Board of Assessors of North Attleborough.

Sturdy Memorial Foundation, Inc. *vs.* Board of
Assessors of North Attleborough.

No. 97-P-2276.

Suffolk. May 6, 1999. - August 3, 1999.

Present: Jacobs, Gillerman, & Greenberg, JJ.

*Taxation,* Real estate tax: abatement, charity, medical practice. *Corporation,*
Charitable corporation. *Charity.*

In a proceeding before the Appellate Tax Board, the board's subsidiary find-
ings of fact did not support its ultimate finding that a certain foundation
was not entitled to the charitable exemption from real estate taxes provided
by G. L. c. 59, § 5, Third [522-523], and the board abused its discretion in
rejecting without explanation the foundation's motion to make additional
findings of fact under Appellate Tax Board Rule 1.29, 831 Code Mass.
Regs. § 1.29 (1996), based on "uncontradicted evidence" [523-524]; the
matter was remanded for the board's reconsideration of the motion.

Appeal from a decision of the Appellate Tax Board.

*Max Volterra* for the plaintiff.

*Robert C. Bliss,* Town Counsel, for the defendant.

Gillerman, J. Sturdy Memorial Foundation, Inc. (foundation),
appeals from a decision of the Appellate Tax Board (board)
which affirmed the decision of the board of assessors of North
Attleborough denying the foundation's applications for abate-
ment of real estate taxes for the years 1996 and 1997. The issue
on appeal is whether the foundation is entitled to the charitable
exemption provided by G. L. c. 59, § 5, Third.

Although the case was before the board under the formal
procedure, and the board issued findings and rulings, the founda-
tion has not provided us with a copy of the transcript, and it is
precluded from arguing that the board's findings are not sup-
ported by substantial evidence. *New Bedford Gas & Edison
Light Co.* v. *Assessors of Dartmouth,* 368 Mass. 745, 749-751
(1975). Ultimate findings of the board may be set aside,

*nevertheless,* if they are not supported by the board's subsidiary findings. *Children's Hosp. Med. Center* v. *Assessors of Boston,* 353 Mass. 35, 39 (1967).

The foundation, which the town of North Attleborough (town) concedes is a charitable organization, leased eighty-two per cent of a two-story wood frame building it owned (property) to Sturdy Memorial Associates, Inc. (corporation).[1] The foundation is entitled to a charitable exemption with respect to that portion of the property only if the corporation is also a "charitable organization" and occupies the property for its charitable purpose. G. L. c. 59, § 5, Third. The foundation formed the corporation because Sturdy Memorial Hospital, which the foundation sponsors and assists financially, had been unable to recruit new doctors to the town.[2] The board concluded that the corporation was not a charitable organization occupying the property for charitable purposes and affirmed the decision of the board of assessors.

The restated articles of organization of the corporation provide that (i) the corporation shall not do anything that would interfere with its exempt status for purposes of Federal income tax, (ii) "[n]o part of the net earnings of the corporation shall inure to the benefit of any private individual," (iii) "no officer or employee of the corporation shall receive . . . any pecuniary profit" other than "reasonable compensation for services in effecting one or more of its purposes," and (iv) upon dissolution, its assets shall be distributed to the foundation or if the foundation no longer qualifies for exemption from Federal income tax under the tax code, then to one or more other exempt organizations.

---

[1] The foundation concedes in its brief that it did not present sufficient evidence to the board to warrant a finding that the remaining eighteen per cent of the property is exempt under G. L. c. 59, § 5, Third.

[2] The corporation's purpose is set forth in its restated articles of organization:

> "The corporation is organized and shall be operated exclusively for the benefit of the Sturdy Memorial Hospital, Inc., and its affiliated organizations, charitable corporations organized under the laws of the Commonwealth of Massachusetts and qualified as· exempt organizations under Section 501(c)(3) of the Internal Revenue Code of 1954, as amended, and in furtherance thereof *shall render medical services and provide health education to persons in the Hospital's service area"* (emphasis added).

The board made the following findings of subsidiary facts. During fiscal years 1996 and 1997, the corporation employed six physicians who were neither corporate officers nor members of the board of directors of the corporation. Five of the physicians were paid a salary the amount of which was determined by the three non-physician members of the compensation committee of the board of directors of the corporation. One physician employed by the corporation worked part-time and was paid on an hourly basis.

The physicians' malpractice insurance, medical supplies, equipment, and staff were paid for or provided by the corporation. The corporation paid all start-up expenses of the physicians it employed, and it paid all the expenses of the operation of the corporation including rent due the foundation for space leased from it.

The physicians employed by the corporation saw patients on an appointment-only basis and did not provide "walk-in" service. In 1996, the physicians attended to 18,000 patient visits and probably more in 1997.[3] All the medical services were provided on the space leased from the foundation. Any "free care" provided by the corporation was a result of charges that were not collected. This amounted to less than one per cent of the annual gross income of the corporation. The board noted that no medical research or education was conducted by the corporation. The board also noted that there was "no evidence" that the services of the corporation were "provided at a less than average cost to patients."

The board made no finding that the compensation paid the physician employees was unreasonable, or that the payment of salaries was "a mere device for securing to the beneficial owners the profits which may accrue," *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 541 (1981), quoting from 4 Scott, Trusts § 372.1 (3d ed. 1967), or whether the corporation realized any net earnings in any year, or whether the net earnings of the corporation, if any, inured to the private benefit of the physician employees or any other individual, or the extent to which the physician employees were providing health care services to the community.

---

[3]Assuming a forty-eight week working year, and a five-day work week, the 18,000 patient visits found by the board translates to approximately 13.6 patients per work day for each of the 5.5 physicians employed by the corporation.

On the basis of the subsidiary findings of fact it did make, the board made the ultimate finding that "the dominant purpose of [the corporation] was to benefit its physician members." The board emphasized its findings that all physician expenses were paid by the corporation, there were no "walk-in" patient visits, that there was no evidence that the services were provided at less than average cost to patients, and that the free care arose only because charges to some patients had not been paid.[4]

The board promulgated its decision on November 17, 1997. On or about December 2, 1997, the foundation filed a motion for additional findings of fact. The motion stated that there was uncontradicted evidence that (i) the corporation operated at a deficit, and that the foundation paid the funds needed to cover the losses, (ii) that the salaries of the physician employees were "less than the salaries of comparable physicians and are not related to the income that each physician generates on behalf of the [corporation]," and (iii) "[a]bout 25% of the patients of the [corporation] are referred to the Sturdy Memorial Hospital and are generally high risk and certain sub-specialty cases such as neurosurgery. All other patients are treated by the [corporation]." The motion was denied without comment on December 16, 1997.

*Discussion.* The board's subsidiary findings of fact do not support its ultimate finding of fact. The charitable nature of a group practice of medicine must satisfy two requirements: (i) there is an absolute prohibition against private inurement "where, for example, the physicians 'employed' by it serve on its board or otherwise exert control over its finances . . . [or] 'if the payment of salaries is a mere device for securing to the beneficial owners the profits which may accrue,'" *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 541, quoting from 4 Scott, Trusts § 372.1, and (ii) the persons benefiting from the operation of the group practice are a "sufficiently large or indefinite class so that the community is benefited by its operations." 384 Mass. at 543. See *id.* at 544.

As to the first requirement, the physicians employed by the corporation are not members of the board of directors or officers of the corporation, do not participate in the determination of their compensation, and have no control over the finances of the corporation. Unless the payment of salaries to the physicians is

---

[4]The board characterized this factual configuration as a "turn-key" private medical practice for the group.

a device to divert all or substantially all of the profits of the corporation to the physicians — which we discuss below — the payment of physician salaries and expenses does not necessarily violate the rule against private inurement. As to the second requirement, the 18,000 visits per year, when translated into the probable number of patient visits per day seen by each physician, result in a very substantial daily work product for each physician. See note 3, *supra.* Unless these 18,000 patient visits are confined to a carefully selected and insignificant group of patients, which we discuss below, there is no failure of performance for the benefit of the community.

However, even if we were to conclude that the board's ultimate finding is not substantiated by its subsidiary findings, the foundation's appeal does not necessarily succeed, for it is well-established that "a party claiming exemption bears a grave burden of proving the claim." *Harvard Community Health Plan, Inc.*, 384 Mass. at 543. The foundation cannot meet its heavy burden of proof by relying solely on the board's subsidiary findings, even if those findings based on erroneous conceptions of the applicable law are eliminated.[5] There would still remain the issues of the reasonableness of the physician salaries and the community benefit.

We noted above that following the promulgation of the board's finding, the foundation filed a motion requesting the board, under Appellate Tax Board Rule 1.29, 831 Code Mass. Regs. § 1.29 (1996),[6] to make additional findings of fact based on "uncontradicted evidence." Those findings would be to the effect that the corporation operates at a deficit, and the foundation is required to contribute the funds needed to meet that deficit; that the salaries of the physician employees are less than

---

[5]The fact of "appointment only" service is merely an efficient management arrangement which, so far as we can determine, has not been identified by our courts as a factor in the equation of charitable immunity. No one would suggest, for example, that waiting hours in a physician's office to see a physician would be a preferable method of operation.

The fact that free care is limited to unpaid bills is irrelevant. See *Harvard Community Health Plan, Inc.*, 384 Mass. at 543 ("almsgiving" is not necessary to qualify for the exemption).

Providing services at below-market charges is not essential to the exemption. See *id.* at 540-541.

[6]The Appellate Tax Board rule appearing in 831 Code Mass. Regs. § 1.29 provides that requests for findings of fact and rulings of law may be filed after argument if leave to do so is given by the board.

the salaries of comparable physicians; and that twenty-five per cent of the patients of the corporation are high-risk patients who are referred to Sturdy Memorial Hospital, the balance of patients being undifferentiated patients.

These requested findings, if supported by the "uncontradicted evidence" as alleged, would establish (i) the absence of any private inurement: there is no profit generated by the enterprise, and in any event, the salaries are below market, and (ii) that the 18,000 patients in 1996 (and "probably more" in 1997) are a large and "indefinite class of persons" in the service area of Sturdy Memorial Hospital, see note 3, *supra*, served by six physicians. See *Children's Hosp. Med. Center* v. *Assessors of Boston*, 353 Mass. at 44. The fact that twenty-five per cent of the patients are referred to Sturdy Memorial Hospital (whose charitable character is not questioned by the board) is a function of the seriousness of the illness of the patients seen by the physicians; the charitable character of the work of the corporation is not jeopardized by what is certainly in the best interest of the patients.

It appears, then, that the board's reasoned disposition of the requested findings would be critical to the outcome of the abatement application. If, as alleged, the findings are based on uncontradicted evidence, it may appear that the abatement application should be allowed. If the findings are not supported by the uncontradicted evidence, then the foundation may not have carried its burden of proof. For this reason, the board's rejection of the motion, without explanation, is, in our view, an abuse of the board's discretion. The opportunity to apply late for requests of findings of fact — which the board's rule 1.29 expressly contemplates — is presumably intended to provide the litigants as well as the board with the opportunity to correct inadvertent errors. Here, if the foundation's motion is accurate in its representation regarding the evidence, it would be a miscarriage of justice in a matter of public concern to reject the motion out-of-hand.

The judgment is reversed and the case remanded to the board for the purpose of reconsidering its denial of the foundation's motion for additional findings of fact, and issuing its opinion thereon.

*So ordered.*