60 Mass. App. Ct. 573 (2004)                      573

Sturdy Memorial Foundation, Inc. *v.* Board of Assessors of North Attleborough.

## Sturdy Memorial Foundation, Inc. *vs.* Board of Assessors of North Attleborough.

No. 02-P-932.

Suffolk. November 13, 2003. - March 4, 2004.

Present: Beck, Kaplan, & Porada, JJ.

*Taxation,* Abatement, Exemption, Real estate tax: abatement, Real estate tax: charity, Real estate tax: exemption. *Charity.*

This court concluded that the Appellate Tax Board (board), in denying applications for abatement of real estate taxes, properly considered all of the appropriate factors in determining whether the taxpayer was operated as a charity, including whether there was an absence of any private inurement and whether benefits from the operation of the taxpayer's medical group practice were bestowed upon a sufficiently large number of persons or an indefinite class so that the community benefited from its operation; moreover, the board did not err in basing its decision following a remand from this court on the record of an earlier hearing in this case, and in the absence of a transcript of that earlier hearing, this court could not say as a matter of law that the board's subsidiary findings of fact were not warranted. [574-577]

This court concluded that substantial evidence supported the ruling of the Appellate Tax Board (board) that the taxpayer's incentive bonus plan for its employee physicians amounted to a diversion of its income or profits to a limited class of persons (its physician employees) in contravention of G. L. c. 59, § 5, Third (*a*), and therefore rendered the taxpayer ineligible for an exemption from real estate taxes for charitable organizations [577-581]; likewise, this court concluded that it could not say that, on the evidence presented, the board erred in ruling that the taxpayer failed to meet its grave burden of proving that a group medical practice located on the property owned by the taxpayer was operated as a public charity [581-584].

Appeal from decisions of the Appellate Tax Board.

*Robert M. Buchanan, Jr.,* for the taxpayer.

*Robert C. Bliss* for Board of Assessors of North Attleborough.

*Seth Berman & Jennifer S. Geetter,* for Massachusetts Hospital Association, amicus curiae, submitted a brief.

Porada, J. This is an appeal by Sturdy Memorial Foundation,

Inc. (Foundation) from two decisions of the Appellate Tax Board (board) affirming the denial by the board of assessors of North Attleborough (town) of applications for abatement of real estate taxes for the fiscal years 1996 and 1997 and for the years 1998, 1999, and 2000 on property owned by the Foundation and leased to Sturdy Memorial Associates (Sturdy) for the operation of a medical clinic. The Foundation claimed it was entitled to abatement because the property qualified for the charitable tax exemption under G. L. c. 59, § 5, Third, which exempts from taxation all "real estate owned by . . . a charitable organization and occupied by . . . another charitable organization or organizations." Although the board found that the Foundation was a charitable organization, it found that its lessee, Sturdy, was not a charitable organization and denied the Foundation's applications for abatement. We affirm the board's decisions but address each decision separately based on its individual procedural posture.

1. *Fiscal years 1996-1997.* On November 17, 1997, the board issued a decision denying the Foundation's application for abatement of real estate taxes for fiscal years 1996 and 1997 on the property used by Sturdy based on its finding that Sturdy's operation of its medical clinic was akin to a commercial group medical practice and existed primarily for the benefit of its physician members and not the community at large. The Foundation filed a notice of appeal of that decision and a request that the board add three additional findings to its decision, namely that (1) Sturdy's income is not sufficient to meet its expenses and the deficit is paid by the Foundation; (2) the salaries of Sturdy's physicians are less than salaries of comparable physicians and are not related to the income generated by the physicians; and (3) twenty-five percent of Sturdy's patients are referred to the Sturdy Memorial Hospital and are generally high risk and certain subspecialty patients, but all other patients are treated by Sturdy. The board denied the Foundation's request for these additional findings. The Foundation appealed that decision to our court. On appeal, we opined that the charitable nature of a group practice of medicine must satisfy two requirements: (1) absolute prohibition against private inurement; and (2) the persons benefiting from the operation of the group practice are

a "sufficiently large or indefinite class so that the community is benefited by its operations." *Sturdy Memorial Found., Inc.* v. *Assessors of N. Attleborough*, 47 Mass. App. Ct. 519, 522 (1999), quoting from *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 543 (1981). Although we found that some of the board's subsidiary findings on which it based its ultimate conclusion were flawed, we remanded the case to the board to reconsider its denial of the Foundation's request for additional findings that we thought were critical to the board's determination whether the application for abatement should be allowed. *Sturdy Memorial Found., Inc.* v. *Assessors of N. Attleborough*, 47 Mass. App. Ct. at 524.

On remand, the board found that Sturdy did operate at a deficit but that this deficit was due to Sturdy's payment of all of the physicians' expenses as well as the start-up costs for newly employed physicians, which costs would gradually decrease as the newly employed physicians became established. The board further ruled that Sturdy's operation at a deficit was not conclusive that it was a charity. The board also found that there was no evidence that the salaries paid to the physicians were less than those paid to physicians in private practice. The board stated that the testimony before it was that the salaries were indeed competitive with those paid to physicians in private practice and were tied in part to the amount of income generated by a physician. Finally, the board found that the Foundation failed to prove that the 18,000 patient visits represented an undifferentiated number of persons as opposed to a smaller number of repeat, established patients because of the inclusion of multiple visits by patients in that number, and that even if twenty-five per cent of its patients were referred to the Sturdy Memorial Hospital (a fact which the board did not accept as proved), that fact standing alone would not establish the charitable purpose of Sturdy. After expanding on its reasons for affirming the town's denial of the application for abatement, the board then reaffirmed its decision denying the application for abatement on the ground that Sturdy was not operated as a charity.

On appeal after remand, the Foundation faults the board's reaffirmation of its decision denying the application for abate-

ment because it did not base its decision solely on the two factors delineated in *Sturdy Memorial Found., Inc.* v. *Assessors of N. Attleborough*, 47 Mass. App. Ct. at 522, 524, namely the absence of any private inurement and the bestowal of the benefit from the operation of the group practice upon a sufficiently large number of persons or an indefinite class so that the community benefits from its operation. Rather, the board's decision was based on an "overall analysis of whether [Sturdy] was conducted as a charitable endeavor, or instead as a commercial enterprise."

We think the Foundation misreads the thrust of the board's pronouncement. The board's statement was a reaffirmation of the well-established principle that the test for determining whether an institution will be classed as a charity for purposes of local property tax exemption is whether "the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive the public benefit from such work." *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 544, quoting from *Massachusetts Med. Soc.* v. *Assessors of Boston*, 340 Mass. 327, 332 (1960). The statement amounted to no more than the board's recognition that to reach its decision it must look not only at whether any of Sturdy's income was used or appropriated for prohibited private inurement and for whose benefit Sturdy was conducted, but also at whether Sturdy was "in fact so conducted that in actual operation it [was] a public charity." *Western Mass. Lifecare Corp.* v. *Assessors of Springfield*, 434 Mass. 96, 102 (2001), quoting from *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket*, 320 Mass. 311, 313 (1946). In reaching its decision, the board properly considered all of these factors and thus did not err in the test utilized by it in determining whether Sturdy was operated as a charity.

The Foundation also argues that the board erred in reaching its decision following remand because it did not conduct further proceedings when the case was remanded to it but based its decision on the record of the hearing that was conducted in

1997. There was no error because the hearing officer who presided at the 1997 hearing was a participant in the decision issued after remand. *Bayer Corp.* v. *Commissioner of Rev.*, 436 Mass. 302, 309 (2002).

Finally, the Foundation argues that the board's conclusion that Sturdy was not operated as a charity was erroneous as matter of law. Because the Foundation did not request a transcript of the proceedings before the board, the Foundation is precluded from arguing that the board's findings are not warranted by the evidence. *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 749-751 (1975). However, it can argue that the board's general conclusion is inconsistent with or not supported by the board's subsidiary findings. *Children's Hosp. Med. Center* v. *Assessors of Boston*, 353 Mass. 35, 39 (1967). See *Brockton Knights of Columbus Bldg. Assn.* v. *Assessors of Brockton*, 321 Mass. 110, 113 (1947). The board's subsidiary findings that the payment of bonuses to physician employees based on the amount of income produced by the physician employee amounted to distribution of income or profits in violation of the statutory prohibition of the distribution of income or profits of a charitable organization to private parties is consistent with the board's conclusion. G. L. c. 59, § 5, Third. Further, the finding that Sturdy did not serve a large enough segment of the population to satisfy the community benefit requirement of a charity but operated instead to serve the employee physicians, a limited class of individuals, would also support its conclusion that the property used by Sturdy was not entitled to a charitable exemption from local property tax. Without a transcript of the evidence produced at the hearing, we cannot say those subsidiary findings were not warranted as matter of law. The Foundation's argument that the board's decision resulted in an error of law fails.

2. *Fiscal years 1998-2000.* Unlike the 1996-1997 case, the Foundation has provided us with a transcript of the hearing before the board on the Foundation's applications for abatement of real estate taxes for fiscal years 1998, 1999, and 2000, and argues on appeal that the board's decision is not supported by substantial evidence and is erroneous as matter of law. Its principal arguments relate to the board's findings that the

578                 60 Mass. App. Ct. 573 (2004)

Sturdy Memorial Foundation, Inc. *v.* Board of Assessors of North Attleborough.

compensation package of the physician employees of Sturdy constitute private inurement, that Sturdy's operation of its medical clinic does not benefit a large or indefinite class in the community, and that Sturdy is in fact operated as a commercial enterprise and not a charity.

As the backdrop for a discussion of these three principal contentions, we summarize those facts that are not controverted. The parties do not dispute that the Foundation is a charitable organization. It organized as separate entities, Sturdy Memorial Hospital (hospital) and Sturdy, both of which were established as charitable corporations under G. L. c. 180. Both the hospital and Sturdy qualify as charitable corporations for Federal tax purposes under Internal Revenue Code § 501(c)(3).[1] Sturdy's Articles of Organization provide that it shall operate "exclusively for the benefit of the [hospital] and its affiliated organizations . . . and in furtherance [t]hereof shall render medical services and provide health education to persons in the [h]ospital's service area." Pursuant to its purpose, Sturdy has established group medical practices in several communities in the hospital's service area, including the facility in North Attleborough.

Sturdy is managed by a board of directors, which consists of four physicians and three nonphysicians. None of the physicians who sit on Sturdy's board are employees of Sturdy. At the North Attleborough facility Sturdy employs six physicians, four full-time and two part-time. The salaries of the employee physicians are set by a compensation committee of the board of directors, none of whom are physicians. The salaries paid to the employee physicians are based on the going rate earned by physicians in private practice. The compensation committee receives information as to the going rate from professional recruiters employed by Sturdy in the hiring process and other outside organizations. In addition, in setting the salaries of each physician, the compensation committee takes into consideration

---

[1]The Supreme Judicial Court has stated that the requirements for exemption from Federal taxation under § 501(c)(3) of the Internal Revenue Code of 1954, as amended, are virtually identical to those under G. L. c. 59, § 5, Third. *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 538 n.3.

the following criteria: quality of care administered, efficiency in the use of the group practice resources, service on hospital committees, participation in community education, and acceptance of Medicare and Medicaid patients. Also, built into each of the physician's employment contracts is an incentive compensation plan which provides that a physician retains fifty percent of any excess productivity generated for Sturdy measured by the extent to which a physician's net collections exceed his or her anticipated productivity for the year. Sturdy also pays the rent and all other expenses of each physician, including his or her start-up costs for his or her practice.

The fees charged by the employee physician are set by Sturdy and are based on payments made by third-party insurers. The Foundation offered no evidence that care was provided to patients who could not afford these fees or that care was provided to anyone at less than the fees established by Sturdy. Each physician is required to maintain a certain number of billable hours and is required to see patients for a set number of hours. All patients are seen by appointment. A physician's panel of patients becomes full ideally when the physician has acquired between 2,000 and 2,500 patients. When a physician's panel at Sturdy became full, Sturdy was prompted to add another physician. For the fiscal years in question, the North Attleborough facility received annually 18,000 patient visits; how many repeat visits by the same patient were included therein is not known. Although each physician is on the staff of the hospital, the physician is not required to refer his or her patients to the hospital.

Sturdy does conduct free medical education lectures and free health care screenings but the number conducted at the North Attleborough facility is unknown.

We now turn to a discussion of the Foundation's challenge to the board's ruling based on its findings.

a. *The compensation package.* The Foundation argues that the board's ruling that the incentive bonus plan for its employee physicians amounts to a diversion of its income or profits to a limited class of persons, its physician employees, in contravention of G. L. c. 59, § 5, Third (*a*), was not supported by substantial evidence and amounts to an error of law. This

prohibition provides that an exemption is not available even to ostensibly charitable organizations if "any of the income or profits of the business of the charitable organization is divided among the . . . members [of the corporation], or is used . . . for other than . . . charitable . . . purposes." *Ibid.* Here, there was no evidence presented that the employee physicians were members of Sturdy. Thus, the only question presented was whether the payment of bonuses to the employee physicians in addition to their salaries constituted the use or appropriation of income or profits of Sturdy for other than a charitable purpose. In ruling that the payment of bonuses to its physician employees amounted to a distribution of income for other than charitable purposes, the board relied upon the testimony of the executive director of Sturdy, who was also the executive director of the Foundation. The director testified that the employee physicians of Sturdy were entitled under their employment contracts to receive a bonus in addition to their salary as a reward for their productivity. She testified that to the extent that a physician's collectible fees exceeded his or her budgeted collectible fees, which were designed to cover at least the physician's share of expenses, the physician was entitled to receive fifty percent of the excess and Sturdy the other fifty percent up to a cap on the excess produced. There was no evidence of the cap or the bonuses paid to Sturdy's physicians during this period. She further testified that the incentive bonus plan was competitive with other incentive bonus plans provided physicians in the marketplace of group medical practices and was designed to insure that the physicians remained with Sturdy. While the Foundation is correct that the payment of competitive salaries would not preclude an organization from being a charity, see *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 538, it is a close question whether the diversion of this income to the employee physicians in the form of bonuses amounts to the proscription set forth in G. L. c. 59, § 5, Third (*a*). See *New England Legal Found.* v. *Boston*, 423 Mass. 602, 612 (1996) ("It is clear, at least by implication, that operating expenses of the charitable organization, even if they support further income production, do not invoke G. L. c. 59, § 5, Third (*a*), and thereby cause complete loss of tax-exempt

60 Mass. App. Ct. 573 (2004)                                         581

Sturdy Memorial Foundation, Inc. *v.* Board of Assessors of North Attleborough.

status, so long as the resulting income is used for charitable purposes"). Nevertheless, we do not think the board erred in ruling that the payment of bonuses under the incentive compensation plan amounted to a use of income or appropriation of income of Sturdy for other than charitable purposes.

The burden of proof lay with the Foundation as the taxpayer to prove that it was in actual operation a charity. *Western Mass. Lifecare Corp.* v. *Assessors of Springfield,* 434 Mass. at 102. Here, the Foundation offered no evidence of the amount of the bonuses paid to the physician employees or that the payment of the same was necessary for the successful operation of Sturdy in light of evidence that their physician employees' salaries were competitive and equal to the going rate paid to physicians in private practice. Clearly, the payment of the bonuses represented a distribution of income to Sturdy's physician employees that would otherwise have inured to Sturdy. As the board noted, tying the payment of bonuses to the productivity of the individual physician is suggestive of a commercial enterprise and not a charitable one. It has been so recognized by other jurisdictions. See *Chisago Health Servs.* v. *Commissioner of Rev.,* 462 N.W.2d 386, 390 (Minn. 1990); *Tri-State Osteopathic Hosp. Assn.* v. *Blakeley,* 898 S.W.2d 693, 695-696 (Mo. App. 1995). On the evidence presented, we cannot say that the board's ruling was unsupported by substantial evidence or amounted to an error of law.

b. *The corporate purpose.* There is no question that Sturdy was organized for a charitable purpose, the provision of health care. See *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge,* 384 Mass. at 543. However, "[t]he mere fact that the organization claiming exemption has been organized as a charitable corporation does not automatically mean that it is entitled to an exemption for its property. . . . Rather, the organization 'must prove that it is in fact so conducted that in actual operation it is a public charity.' " *Western Mass. Lifecare Corp.* v. *Assessors of Springfield,* 434 Mass. at 102, quoting from *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,* 320 Mass. at 313. The board found that the Foundation failed to prove that Sturdy's operation of a group medical practice on the property owned by the Foundation was operated as a public

charity. The board's conclusion was based on the following factors. The board took into consideration that Sturdy did not provide medical care at less than the cost established by third-party insurance carrier charges; that it was designed to compete with private medical practices in the hospital's service area and to be competitively attractive to potential physician employees; that its contracts with its employee physicians emphasized bill-able hours and patient volume, and were tied to the physician's productivity; that its appointments-only policy for treatment of patients limited the number of people who received benefits from Sturdy's operation; and that the number of people treated by the group medical practice at the North Attleborough facility did not represent a sufficiently large or indefinite class so that the community was benefited by its operation. Although we are of the opinion that some of these factors, such as the payment of competitive wages or its appointment-only policy are not determinative of whether Sturdy was actually operated as a charity, see *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 538; *Sturdy Memorial Found., Inc.* v. *Assessors of N. Attleborough*, 47 Mass. App. Ct. at 523 n.5, we cannot say that the board's overall consideration of these factors in determining whether the dominant purpose of Sturdy's operation of its group medical practice in North Attleborough was for the benefit of "the public good" or for the benefit of "a limited class of persons," *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 544, quoting from *Massachusetts Med. Soc.* v. *Assessors of Boston*, 340 Mass. at 332, was error.

In upholding the exemption from local property tax to the health care provider in *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. at 544, the Supreme Judicial Court noted that the record showed that the plan provided substantial medical services at a lower than average cost to a large number of persons (approximately 64,000 enrollees) who were drawn from all walks of life. Thus, the board could properly consider the fact that Sturdy did not provide medical care at a cost lower than is charged by conventional health care systems. It could also properly consider the number of people served by its group medical practice. Although the Foundation

presented evidence that its North Attleborough facility had 18,000 patient visits annually, the board rejected this figure as representative of the total number of patients served because there was no evidence offered as to the number of repeat visits within that year by the same patients. There was evidence, however, before the board that a physician ideally serves approximately between 2,000 and 2,500 patients and that there were four full-time physicians and two part-time physicians employed for the fiscal years in question. As a result, the board could properly infer that there were considerably less than 18,000 patients served annually. Although no precise number has been established at which a charitable organization will be deemed to serve a large enough segment of the population to confer a benefit upon the community, *id.* at 543, an organization will qualify if the number of persons served is fluid and is drawn from a large segment of society or all walks of life. *New England Legal Found.* v. *Boston*, 423 Mass. at 612. Thus, it was proper for the board to consider that the number of people served was not fluid because of the practical limits placed on the number of patients that could be served by each physician and the appointment-only policy. The board could properly infer that those limits did not make the group medical practice's services accessible to a sufficiently large and indefinite class of persons. See *Western Mass. Lifecare Corp.* v. *Assessors of Springfield*, 434 Mass. at 105.

Similarly, the board could properly consider that the Foundation's intent to make Sturdy competitive with private medical practices, compare *Children's Hosp. Med. Center* v. *Assessors of Boston*, 353 Mass. at 41-42, and to provide an income-sharing mechanism in its employment contracts with physicians tied to their productivity, see *Chisago Health Servs.* v. *Commissioner of Rev.*, 462 N.W.2d at 390, were more akin to the conduct of a commercial enterprise than a charity. In reaching its conclusion, the board also properly considered that Sturdy operated at a deficit and that it was affiliated with the hospital. As the board pointed out, the mere fact that Sturdy operated at a deficit did not necessitate a finding that it operated as a charitable enterprise. See *Brockton Knights of Columbus Bldg. Assn.* v. *Assessors of Brockton*, 321 Mass. at 115. The board pointed to the fact that Sturdy's deficit was attributable to

the payment of all of the physicians' start-up costs and operating expenses as well as the distribution in part of Sturdy's income in the form of bonuses to the employee physicians. Similarly, the board discounted Sturdy's affiliation with the hospital because it found that Sturdy operated independently of the hospital. Cf. *Milton Hosp. & Convalescent Home* v. *Assessors of Milton*, 360 Mass. 63, 69 (1971) (property owned by the hospital and leased to staff physicians for the conduct of their private medical practices was not exempt from local property tax under G. L. c. 59, § 5).

In sum, we cannot say on the evidence presented that the board erred in concluding that the Foundation failed to meet its grave burden of proving that the property occupied by Sturdy was exempt from local property tax because it was used for a charitable purpose. In reaching this conclusion, we are mindful that in reviewing mixed questions of fact and law, the board's expertise in tax matters must be recognized and its decisions are due some deference, and we will find the evidence insufficient to support the board's decision only where "a contrary conclusion is not merely a possible but a necessary inference from the findings." *Erving Paper Mills Corp.* v. *Commissioner of Rev.*, 49 Mass. App. Ct. 14, 17 (2000), quoting from *Olympia & York State St. Co.* v. *Assessors of Boston*, 428 Mass. 236, 240 (1998).

*Decisions of the Appellate Tax
Board affirmed.*