MILLENNIUM EQUITY HOLDINGS, LLC, & others[1] *vs.* EDWARD
M. MAHLOWITZ.

No. 07-P-531.

Suffolk. March 19, 2008. - October 28, 2008.

Present: CYPHER, ARMSTRONG, & MILLS, JJ.

Further appellate review granted, 454 Mass. 1104 (2009).

*Abuse of Process. Malicious Prosecution. Evidence,* Hearsay. *Practice, Civil,*
Findings by judge.

Discussion of the elements of the tort of abuse of process [35], of the ele-
ments establishing a claim of malicious prosecution [35-36], and of the
standard of review of a matter wherein the trial judge was the finder of
fact [36-37].

In a civil action brought by a corporate entity and two of its members, alleg-
ing that the defendant attorney abused process by obtaining and recording
an attachment of one plaintiff's interest in the entity's real property (an of-
fice building), the record did not support the judge's ultimate findings in
the defendant's favor on his counterclaims for abuse of process and mali-
cious prosecution, where the judge erroneously excluded testimony highly
relevant to whether the plaintiffs had probable cause to believe that the at-
tachment caused the sale of the property to fail [37-39]; and where she
incorrectly concluded that one plaintiff improperly attempted to arrange a
sale of the business and brought the instant action against the defendant
out of disdain for the defendant's zealous advocacy of that plaintiff's wife
in their ongoing divorce action [39-40]; further, the record lacked an
explicit factual finding regarding probable cause, an indispensable element
to the malicious prosecution claim [40-42], and a valid finding that the
ulterior purpose of disqualifying the defendant as counsel in the divorce
case was the primary purpose for the plaintiffs' commencement and
continued prosecution of the present action [42-43].

CIVIL ACTION commenced in the Superior Court Department on
May 27, 2004.

The case was heard by *Elizabeth M. Fahey,* J.

*David L. Kelston* for Millennium Equity Holdings, LLC, &
another.

[1]David Rabinovitz and Joseph P. Zoppo.

*Max D. Stern* for David Rabinovitz.

*Edward M. Mahlowitz (John L Mason, Jr., with him), pro se.*

*Robert S. Sinsheimer, pro se.*

*Isaac H. Peres, pro se.*

MILLS, J. Millennium Equity Holdings, LLC (Millennium), and two of its three members, David Rabinovitz and Joseph P. Zoppo, commenced an action against defendant Edward M. Mahlowitz alleging abuse of process.[2] The gravamen of the plaintiffs' complaint was that Mahlowitz, acting as the attorney for Rabinovitz's wife in their divorce case, had improperly obtained and recorded an attachment on Millennium's property, an office building in the Brighton section of Boston, thereby derailing a scheduled sale that resulted in Millennium's bankruptcy and eventual sale of the building at a reduced price. Mahlowitz counterclaimed for abuse of process and malicious prosecution by the plaintiffs in bringing their abuse of process complaint against him.[3]

After a jury-waived trial, a Superior Court judge found and ruled in Mahlowitz's favor on the plaintiffs' abuse of process claim.[4] As to Mahlowitz's counterclaims,[5] the judge found that the plaintiffs had abused process and prosecuted their complaint maliciously, entitling Mahlowitz to damages for injuries to his business, to his financial status, and from his feelings of distress, as well as attorney's fees on those counts.[6] The judge awarded

---

[2]The plaintiffs' other counts were dismissed on summary judgment.

[3]Mahlowitz's counterclaims also included counts for filing a frivolous complaint, G. L. c. 231, § 6F, and violation of the "anti-SLAPP" statute, G. L. c. 231, § 59H.

[4]As to this claim, the judge ruled that (1) Mahlowitz, as an attorney, was entitled to complete and absolute immunity for authorized actions taken on behalf of a client during the course of litigation before the Probate and Family Court; (2) Mahlowitz's action in seeking the attachment constituted petitioning activity protected by the anti-SLAPP statute, G. L. c. 231, § 59H; (3) the plaintiffs were estopped from claiming abuse of process by Mahlowitz because they had argued, in the Federal Bankruptcy Court, that the attachment was of no consequence to Millennium because it was only Rabinovitz's interest, as an individual, that was attached; and (4) the plaintiffs' claim failed because the plaintiffs had failed to seek judicial dissolution of the attachment.

[5]At the close of day six of the trial, after dismissing the plaintiffs' case against Mahlowitz, the judge announced that she would consider "all the testimony that [she had] already heard with respect to [Mahlowitz's] counterclaim[s]." On day seven, Rabinovitz's then ex-wife and Mahlowitz testified and a number of additional exhibits were admitted.

[6]The judge recited in her decision that Mahlowitz had established a case for

Mahlowitz damages of $400,000 and attorney's fees in excess of $150,000, stating that "[t]hese fees are also awarded pursuant to G. L. c. 231, § 6F." The plaintiffs appealed.[7]

1. *Background*.[8] In April, 2002, Debra Abrams (then Debra Rabinovitz), represented by Mahlowitz, filed a divorce complaint against her husband, David Rabinovitz. At the same time, Millennium, a Delaware limited liability company, held title to an office building on Washington Street in Brighton. Its appraised value was approximately $1,500,000, and the equitable interests in Millennium were apportioned between Rabinovitz, Zoppo, and a third principal, Edward Stevenson, in disproportionate shares.

In February, 2002, the principals had voted to sell the building at the urging of their institutional mortgagee (lender). A short time later the lender, insisting on a sale, instructed Millennium to accept an offer by Fargo Street Associates, Inc. (Fargo), in the amount of $1.65 million. By the time the purchase and sale agreement was signed on November 8, 2002, relations among the three principals had deteriorated significantly and there were lawsuits or threats of lawsuits among all of them. They all wanted, however, to sell the building to Fargo. The agreement called for a closing by the first week in December, 2002, with a standard extension provision, and required title to be "good and clear, fee simple, both of record and in fact, and

intentional infliction of emotional distress. This recital was an oversight. The judge had denied Mahlowitz's motion to amend his counterclaim to add a count for intentional infliction of emotional distress. In view of our disposition of the case, further discussion is unnecessary.

[7]The defendant subsequently filed a cross appeal as to the denial of his motions for sanctions against two attorneys who represented the plaintiffs in this · case.

[8]We provide a summary account of this protracted and emotionally charged case, embodied in a very extensive record. "In doing so we apply the rule that [relevant] findings of fact made by the judge below are to be accepted by us unless clearly erroneous, Mass. R. Civ. P. 52(a), [as amended, 423 Mass. 1402 (1996)], and we also take the view that more general appraisals by the judge, who presided in the case from the beginning, are entitled to respect although they are not binding on us." *Perez* v. *Boston Hous. Authy.*, 379 Mass. 703, 705 (1980). Additional findings and other uncontradicted evidence will be included in our discussion of the issues. We will more fully state the standard for our review below. It is obvious that the personal hostility between Mahlowitz and Rabinovitz and the bitter tactics they employed burdened the trial judge throughout these proceedings and made her job unfairly complicated.

marketable . . . , free from all liens, encumbrances, easements and restrictions."

In the meanwhile, the divorce case was contentious. When Abrams learned that Millennium had obtained a buyer for the building, she informed Mahlowitz, who, on December 3, 2002, filed an ex parte motion with the Probate and Family Court to attach "all the right, title and interest of [Rabinovitz] in the real estate located at 480 Washington Street, Brighton, . . . title in the name of Millennium Equity Holdings, LLC, . . . up to the amount of $500,000."[9] The motion was allowed the same day, after an exchange between the judge and Mahlowitz, which is set forth in the margin.[10] The attachment was recorded in the registry of deeds on December 4, 2002.

[9]The motion provided that the attachment in the amount of $500,000 was being requested "as security for the outstanding order of support and as security for any future order of support to be entered in [the divorce] action and for any future division of marital assets entered in [the divorce] action." An affidavit of Abrams was also submitted with the motion.

[10]The court tape recording of this interchange was played during the trial, and the tape became an exhibit. The only portion of the reproduced transcript that Mahlowitz disputed was the single word "you" where it appears below, in brackets.

MR. MAHLOWITZ:    "Good afternoon your Honor."

THE JUDGE:    "Good afternoon Mr. Mahlowitz. For the record please."

MR. MAHLOWITZ:    "Attorney Edward Mahlowitz. Representing the plaintiff Debra Rabinovitz."

THE JUDGE:    "You're here on a Complaint for Contempt. Short order of notice?"

MR. MAHLOWITZ:    "No your Honor. There is an underlying Complaint for Divorce."

THE JUDGE:    "*You are looking for an attachment*" (emphasis added).

MR. MAHLOWITZ:    "*I am looking for an attachment, a real estate attachment* on the underlying Complaint for Divorce and the Complaint for Contempt which is returnable on Monday. *I am asking for an ex parte order on a piece of property* which on information and belief the defendant is selling tomorrow. Obviously the nature of the emergency, I have an affidavit by my client who discovered this at the last moment. The

During the weeks preceding December 3, 2002, Attorney Peter R. Fenn, an experienced real estate attorney, was managing the transaction between his client, Millennium, and Fargo, in anticipation of a closing. There had been numerous complications as well as serious time deadlines. On December 3, 2002, Fargo's attorney sent Fenn a letter confirming the closing for December 10, 2002. On December 5, 2002, Fargo's attorney sent Fenn another letter confirming the same. On December 4, 2002, between the receipt of these two letters, Fenn received a facsimile transmission from Mahlowitz informing Fenn that the attachment had

|  |  |
|---|---|
|  | asset is held in the name of Millennium." (Emphasis added.) |
| THE JUDGE: | "Equity Holdings, LLC." |
| MR. MAHLOWITZ: | "Thank you your Honor." |
| THE JUDGE: | "You['re] welcome. Is he the majority shareholder?" |
| MR. MAHLOWITZ: | "He is the majority shareholder. On the last financial statement I believe he says he owns 70% of it, the one before 60%. It is on, I believe, the next to last pages. He also represented that I believe the property was in foreclosure at our last hearing before the Court on October the 18th, and I don't represent, remember what he said the value was, if any. On information and belief the plaintiff has set forth what she believes the property is going to be sold for. There are three partners in it. One is Joseph Zoppo, second an Edward Stevenson and the third Mr. Rabinovitz." |
| THE JUDGE: | "So what you are asking the Court to do is to attach just his interest." |
| MR. MAHLOWITZ: | "That is correct Your Honor. [You] do not want to interfere with the sale, obviously, as far as, on information and belief, I believe my client would represent as far as she knows and there is no allegation it is not a fair selling price. The problem is under the automatic restraining order I think this is something that he has to through his counsel and I am not making any allegation that his counsel even knows about this. That he would have to either ask his wife, or ask counsel or obtain court order to sell it. Since he's, it is basically, if he owns 60 or 70% it is a principal asset of his and *I think it is in violation of the automatic restraining order . . .* " (emphasis added). |

been recorded. Fenn believed that the attachment would, without question, prevent the sale from going forward. On December 4, 2002, after Fenn received the facsimile, he telephoned and spoke with Mahlowitz, informing him of the closing date and that the attachment would prevent the sale. Fenn requested that Mahlowitz remove the attachment, but Mahlowitz refused. On December 5, 2002, Fenn followed up with a letter to Mahlowitz, sent by facsimile transmission, explaining that if the sale of the property were stopped, the lender would likely foreclose. Fenn demanded that Mahlowitz voluntarily discharge the real estate attachment, and stated that he instead could attach the proceeds due Rabinovitz from the sale. Thus, Fenn did attempt to communicate with Mahlowitz, by telephone and letter, regarding the sale and the concern that the attachment would prevent it. Mahlowitz never responded to Fenn's letter and did not take steps to modify the attachment or to secure the proceeds of the sale without interfering with the sale itself.[11]

On December 5, 2002, Rabinovitz communicated with bankruptcy counsel Herbert S. Weinberg and made a decision that a petition be filed in the Federal Bankruptcy Court on behalf of Millennium. On December 9, 2002, after the preparation of that petition, Weinberg sent a facsimile letter to Mahlowitz also demanding that Mahlowitz voluntarily discharge the attachment or else a bankruptcy proceeding would be filed on behalf of Millennium.[12] Apparently due to a filing error with the first petition, Weinberg filed a second bankruptcy petition on behalf of Millennium. After the lender had scheduled a foreclosure auction, Fargo, the original buyer, eventually purchased the property from

---

[11]We note that Mass.R.Dom.Rel.P. 4.1(g) provides opportunity for dissolution or modification of ex parte attachments on short notice. Rabinovitz (through counsel that was available) did not seek relief from the Probate and Family Court's order of attachment pursuant to this rule. Through our disposition of this case, we do not intend to chill careful and appropriate use of attachment requests pursuant to Mass.R.Dom.Rel.P. 4.1(f).

[12]The text of Weinberg's letter stated in part:

"Please be advised that Millennium . . . has retained this office to immediately file a bankruptcy proceeding if Debra [Abrams's] attachment . . . is not dissolved by 4:00 p.m. today. Millennium . . . has taken this step because it has a purchase and sale agreement to sell real estate . . . which must close by December 31, 2002."

the bankruptcy trustee for about $200,000 less than the earlier contract price.

Here, the judge ultimately found that the plaintiffs had abused process and that Mahlowitz had established the elements on his counterclaim for malicious prosecution. Among the plaintiffs' arguments on appeal, which persuade us to reverse the judgment as to the defendant's counterclaims, are (1) on the malicious prosecution claim, there was no valid finding of a lack of probable cause; (2) on the abuse of process claim, the judge's finding that the ulterior motive of eliminating Mahlowitz from the divorce case was the primary purpose for filing and prosecuting the lawsuit is not supported; and (3) the judge mistakenly excluded critical admissible evidence.

2. *Applicable law.* (a) *Abuse of process.* The elements of the common-law tort of abuse of process are "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Gutierrez* v. *Massachusetts Bay Transp. Authy.*, 437 Mass. 396, 407 (2002), *S.C.*, 442 Mass. 1041 (2004), quoting from *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986). "For there to be an abuse of process, 'it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.' " *SMS Financial V, LLC* v. *Conti*, 68 Mass. App. Ct. 738, 747 (2007), quoting from *Ladd* v. *Polidoro*, 424 Mass. 196, 198 (1997).

"When process is employed for the purpose for which the law intends its use, no abuse of process occurs even though the person using the process may have an improper motive in addition to his lawful intention." *Vahlsing* v. *Commercial Union Ins. Co.*, 928 F.2d 486, 490 (1st Cir. 1991). See Restatement (Second) of Torts § 682 comment b, at 475 (1977) ("no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant").

(b) *Malicious prosecution.* "To prevail on a claim for malicious prosecution, a plaintiff must establish that he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action term-

inated in his favor." *Chervin* v. *Travelers Ins. Co.*, 448 Mass. 95, 103 (2006), citing *Hubbard* v. *Beatty & Hyde, Inc.*, 343 Mass. 258, 261 (1961). To establish probable cause, "[a]ll that is necessary, where civil proceedings are involved, is that the 'claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication.' " *Id.* at 262 (citation omitted). "We examine 'the information known to [the defendant] "at the time [he] instituted the complaint rather than . . . what may turn out later to have been the actual state of things." ' " *Chervin* v. *Travelers Ins. Co.*, supra at 104, quoting from *Carroll* v. *Gillespie*, 14 Mass. App. Ct. 12, 19 (1982). The lack of probable cause "must be affirmatively proved, and may not be inferred from the existence of malice." *Chervin* v. *Travelers Ins. Co.*, supra at 104, quoting from *Higgins* v. *Pratt*, 316 Mass. 700, 709 (1944).

(c) *Standard of review.* When an appeal is taken from a non-jury trial, we review the findings of the trial judge for compliance with Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). A trial judge must "find the facts specifically and state separately [the] conclusions of law thereon." *Rapp* v. *Barry*, 398 Mass. 1004, 1004 (1986), quoting from Mass.R.Civ.P. 52(a). The findings must contain "as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial [judge] reached [the] ultimate conclusion on each factual issue." *Rapp* v. *Barry*, supra, quoting from *Denofre* v. *Transportation Ins. Rating Bureau*, 532 F.2d 43, 45 (7th Cir. 1976). "Requiring the trial judge carefully to consider and to make subsidiary findings of fact on each issue decided gives the appellate court a clear understanding of the judge's reasoning and the basis of [the] decision." *Rapp* v. *Barry*, supra at 1005. These findings of fact should be clear, complete, and accurate, *Lindsey* v. *Ogden*, 10 Mass. App. Ct. 142, 155 (1980), and any included subsidiary facts should, of course, support the ultimate findings. See *Sturdy Memorial Foundation, Inc.* v. *Assessors of N. Attleborough*, 47 Mass. App. Ct. 519, 519-520 (1999).

In reviewing a matter wherein the trial judge was the finder of fact, "we accept the judge's findings of fact as true unless they are clearly erroneous." *Green* v. *Blue Cross & Blue Shield of Mass., Inc.*, 47 Mass. App. Ct. 443, 446 (1999), quoting from *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). "A finding is

'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309 (1981), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

In addition to setting aside findings that are "clearly erroneous," a reviewing court will set aside findings when the trial judge failed to weigh all of the relevant evidence before making the factual findings, *Locurto* v. *Giuliani*, 447 F.3d 159, 181 (2d Cir. 2006), or when findings were based upon improperly admitted evidence. See *Irving* v. *United States*, 49 F.3d 830, 835 (1st Cir. 1995). Finally, findings of fact "resting upon or induced by an incorrect legal standard" will not be sustained. Smith and Zobel, Rules Practice § 52.7, at 185 (2007).

3. *Discussion.* The judge made ultimate findings that the plaintiffs had abused process and prosecuted Mahlowitz maliciously. The record, however, does not support these conclusions.

(a) *Exclusion of critical Fenn testimony.* The judge made a critical subsidiary finding that the Millennium-Fargo transaction had been abandoned by Fargo as of, approximately, Thanksgiving, 2002 (Thanksgiving abandonment), and that, accordingly, the attachment recorded by Mahlowitz more than one week later could not be blamed by the plaintiffs as having aborted their sale. The judge based that finding upon her evaluation of one portion of the testimony of witness Ada Hohchin Wong, a Fargo principal. The plaintiffs argue that this finding of a Thanksgiving abandonment, based on only a portion of Wong's testimony, was clear error because her entire testimony, fairly read, conclusively established that Fargo would have closed in mid-December. We need not decide this discrete claim because the judge's erroneous exclusion of critical testimony from Fenn, Millennium's closing attorney, permitted her to make the subsidiary finding of Fargo's preattachment abandonment of the sale without considering all the relevant evidence.

Fenn, a sole practitioner with twenty-five years of practice dealing principally with real estate and land use, had, for approximately three years prior to 2002, performed legal work for Millennium, including its acquisition of the Brighton property that

was extensive, as well as typical, for a commercial transaction. Fenn was also involved with the proposed sale to Fargo, and had ongoing conversations with Fargo's attorney until at least December 5, 2002, after the attachment had been recorded, in preparation for a December closing. At the trial, the judge excluded Fenn's testimony as to the communications he had received from Fargo's counsel after the attachment. The judge also excluded Fenn's understanding of whether the attachment had an effect on the sale.[13] During Fenn's testimony, a letter that he wrote and sent by facsimile transmission to Mahlowitz on December 5, 2002, in which he advised Mahlowitz that if the sale were stopped, the lender would likely foreclose, was admitted. When Fenn again attempted to testify as to why the sale did not go forward, his understanding that the attachment caused the sale to fail was excluded.

To continue our analysis of the significance of the excluded testimony, we note that when Fenn moved to intervene, after judgment entered, to address the damage to his own reputation that he claimed was caused by the judge's findings and rulings, the judge reviewed two of Fargo's attorney's communications with Fenn and credited those communications as establishing that as of December 5, 2002, the sale was still scheduled to close. This postjudgment finding is inconsistent with the judge's earlier subsidiary finding of the Thanksgiving abandonment. And while it is somewhat unclear as to whether Fenn's December 5 letter (marked as exhibit 70) became an exhibit at trial,[14] we conclude that it is the better course to consider the letter in evidence by virtue of the judge's comment as well as her later reliance on it when she made her explicit postjudgment finding that the closing was still scheduled as of December 5, 2002.

In any event, exclusion of evidence of Fargo's communications to Fenn was error. These communications were not hearsay, as they were not offered to prove the truth of the matter asserted, but rather, to prove Fenn's state of mind. See *Commonwealth* v.

---

[13]Fenn did testify (apparently without objection) that he received notice from Mahlowitz of the attachment four or five days prior to the scheduled December date for the closing.

[14]During the trial it was noted by the judge that she had read the letter, but there is no unequivocal offer or admission of the letter as an exhibit.

*Qualls*, 425 Mass. 163, 167 (1997). Moreover, even if the communications were not truthful, the fact that they were made to and received by Fenn was nevertheless highly relevant on the issue of probable cause, which we discuss below.

(b) *Supplemental Probate Court Rule 411 — automatic restraining order.* It was error for the judge to fail to make the distinction between the sale of Rabinovitz's assets and the sale of Millennium's property for purposes of the automatic restraining order pursuant to Rule 411 of the Supplemental Rules of the Probate Court (2000). Paragraph (a) of that rule states, in relevant part:

> "Neither party [to a complaint for divorce] shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of any property, real or personal, belonging to or acquired by, either party, . . . [with certain exceptions not applicable here]."

From the outset of the trial, the judge was persuaded that by attempting to effectuate the sale of Millennium's property, Rabinovitz (and, vicariously, Zoppo) was seeking to evade an order of the Probate and Family Court. The judge's misconception of the restraining order led to her mistaken conclusion that Rabinovitz was improperly attempting to arrange a sale of the business and to the incorrect inference that Weinberg was assisting him to do so in violation of professional standards. This led to the judge's next conclusion that Rabinovitz "was concerned that he would . . . be found in contempt of the Probate Court's Automatic Restraining Order," and this, in turn, contributed to the finding that Rabinovitz filed this action against Mahlowitz because he disliked Mahlowitz's zealous advocacy of Abrams in the divorce action, including the practice of filing contempt complaints against Rabinovitz.

The judge's interpretation of rule 411, as to the Millennium-Fargo transaction, was not correct. First, the automatic restraining order affected only property belonging to a *party* to the divorce proceeding, that is, Rabinovitz personally. The rule restrained Rabinovitz from disposing of his *interest* in Millennium, and any proceeds he might have received *from* Millennium. It had no effect on Millennium itself or on Millennium's property. This was

both a legal distinction[15] and a real one — Rabinovitz had two partners, both of whom wanted the property to be sold. In addition, no objection was ever raised as to an attachment of Rabinovitz's interest; indeed, Fenn suggested that Mahlowitz do just that. Second, in any event, the Probate and Family Court judge *did*, in effect, grant permission for the sale. According to the transcript of the ex parte hearing at which Mahlowitz obtained the attachment, it was understood, regardless of Mahlowitz's dispute as to the word "you" (see note 10, *supra*), that the attachment was granted on the understanding that it would not interfere with the sale, which was assumed to be going forward. Third, Abrams's interest was not in any way legally threatened by the sale.

We conclude that this error infected the factual findings. The transcript and the written findings indicate that the judge had determined that the complaint against Mahlowitz was part of Rabinovitz's effort to evade a court order, and that he involved Zoppo, as well as the lawyers, as confederates.

(c) *The probable cause element.* Missing from the judge's findings and rulings is an explicit finding that the plaintiffs lacked probable cause, an indispensable element of the malicious prosecution claim. Nor does the evidence support such a finding. Resolution of this issue entails an inquiry into whether, on an objective basis, see *Chervin* v. *Travelers Ins. Co.*, 448 Mass. 95, 104 (2006), there was information available to the plaintiffs when the action was filed upon which they could reasonably conclude that "there is a chance that [their] claim may be held valid." *Id.* at 103 (citation omitted). There is an essential difference between the question whether the plaintiffs had enough evidence to win, and whether they had enough to file suit. In a case such as this one, where both are in issue — the former in the affirmative claim, the latter in the counterclaim — it is vital that the judge distinguish carefully between the two, since the plaintiffs "should not be subjected to the risk that, if the [judge] reject[s] [their] position, that same

---

[15]See, e.g., *Ray Consol. Copper Co.* v. *United States*, 268 U.S. 373, 377 (1925) (assets of a company and its shares of stock are "entirely different things"); *M. McDonough Corp.* v. *Connolly*, 313 Mass. 62, 66 (1943) ("The ownership of all the stock and the absolute control of the affairs of a corporation do not make that corporation and the individual owner identical, in the absence of a fraudulent purpose in the organization of the corporation").

[judge] . . . will conclude that [the plaintiffs] knew from the beginning that the claim was groundless." *Ladd* v. *Polidoro*, 424 Mass. at 200.

The judge did not make a specific probable cause finding based upon the necessary analysis of the evidence as it would have appeared to the plaintiffs at the time of commencement of their action. Without such explicit consideration, the findings are deficient, and in fact, there was reason on this record, as matter of law, for someone in the plaintiffs' position to believe there were substantial grounds for a claim against Mahlowitz, including the following. First, Mahlowitz obtained a *real estate attachment* on property "standing in the name of Millennium Equity Holdings, LLC," and as an experienced attorney, obviously knew that the attachment would present a significant obstacle to the sale. As another Superior Court judge had earlier observed in denying Mahlowitz's request for summary judgment on the abuse of process claim:

> "A reasonable buyer could conclude that the real property itself . . . now carried an encumbrance; that it was purchasing a lien as well as the real estate; that, at the least, this development constituted a significant complication in the transaction; and that it should postpone the closing for resolution of that complication. In short, the attachment could have created a reasonable inhibition for the buyer. Attorney Mahlowitz could reasonably have appreciated or anticipated that consequence."

This motion judge's observation is dispositive on the issue of probable case. See, e.g., 1993 advisory committee note to Fed. R.Civ.P. 11 (evidence sufficient to defeat motion for summary judgment constitutes sufficient evidentiary support for purposes of rule 11).

Second, when Mahlowitz requested a real estate attachment from the Probate and Family Court judge, assurances were given that nothing would be done to interfere with the sale. However, Mahlowitz recorded the attachment against the property, and then refused to limit the attachment to Rabinovitz's interest, or even to respond to the repeated entreaties of Fenn and Weinberg that the attachment would destroy the sales transaction.

Third, Fenn, an experienced conveyancing attorney who was

fully informed of the transaction, testified that he believed that the attachment "would kill the sale," and provided an affidavit to this effect with the plaintiffs' opposition to the defendant's summary judgment motion. More importantly for present purposes, however, the issue on the counterclaims was not whether the attachment terminated the sale, but whether the plaintiffs could reasonably have thought so, and as matter of law on this record, they were entitled to so believe.

(d) *Ulterior purpose in abuse of process.* On the abuse of process claim there was no valid finding that the ulterior purpose of eliminating Mahlowitz from the divorce case was the primary purpose for the commencement and continued prosecution of this action. The evidence as to the attempt to disqualify Mahlowitz was as follows. Abrams testified that in the spring of 2004, at the end of a heated telephone argument, Rabinovitz told her that she would "soon be needing a new lawyer because he was going to sue [Mahlowitz]." On October 15, 2004, Rabinovitz, acting pro se, filed a motion in the divorce action seeking mediation and disqualification of Mahlowitz. After argument on the same day, the motion as to disqualification was denied. Rabinovitz never renewed the motion, but did continue this current lawsuit against Mahlowitz for more than two and one-half years, through trial and judgment. Also, Rabinovitz never asked for any concession in the divorce case in exchange for dismissal of this case.

While the judge found that the "only motivation" Rabinovitz had when he communicated his "threat[]" to disqualify Mahlowitz was to eliminate him as Abrams's lawyer in the divorce case, there was no sufficient finding that this ulterior motive was still Rabinovitz's sole or primary purpose when he was both "filing and prosecuting" this action, the predicate of her finding of liability.[16] Nor could she have done so. For over two years *after* Rabinovitz's momentary effort to disqualify Mahlowitz had failed, Rabinovitz did "nothing more than carry out the process to its authorized conclusion." *Cohen* v. *Hurley,* 20 Mass. App. Ct. 439, 442 (1985) (citation omitted). The judge's finding of an ulterior purpose on the part of Rabinovitz was grounded on her finding

---

[16]The disqualification motion itself could not constitute an abuse of process as the motion is not "process." See *Jones* v. *Brockton Pub. Mkts., Inc.,* 369 Mass. 387, 389-390 (1975).

that he was untruthful. However, mere disbelief of a witness's testimony would not furnish the necessary opposite or affirmative presence of a particular ulterior purpose; a specific additional subsidiary finding was necessary. See *Commonwealth* v. *Swartz*, 343 Mass. 709, 712 (1962); *Atkinson* v. *Rosenthal*, 33 Mass. App. Ct. 219, 224 (1992).

The judge failed to consider the evidence suggesting alternate legitimate purposes on the part of Rabinovitz. While lack of probable cause is not an element of the tort of abuse of process, whether a person in fact has grounds to sue can be highly relevant in assessing whether he had an ulterior purpose. "That the person commencing the litigation knew or had reason to know his claim was groundless is relevant, however, as tending to show that the process was used for an ulterior purpose." *Fishman* v. *Brooks*, 396 Mass. 643, 652 (1986). *Ladd* v. *Polidoro*, 424 Mass. at 199. The converse is also true: if a person does have substantial grounds to believe his lawsuit has merit, it is far less likely that he pursued it for some purpose other than obtaining the relief he sought. As discussed above, however, when Rabinovitz filed and prosecuted this lawsuit he had ample reason to believe that Mahlowitz had obtained the attachment, and maintained it, not to secure assets for his client, but to gain negotiating leverage in the divorce case. Yet this evidence is nowhere discussed in the judge's findings and rulings.[17]

*Conclusion.* That portion of the judgment entered on January 23, 2007, that entered in favor of the defendant on the plaintiffs' claims is affirmed; in all other respects, the judgment is reversed. The order entered on June 22, 2006, denying the motions for sanctions is affirmed.

*So ordered.*

---

[17]Mahlowitz's requests for imposition of Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974), sanctions upon Attorneys Isaac H. Peres and Robert S. Sinsheimer were baseless when made, and the judge's denial was proper. Mahlowitz's appeal of her denial is similarly groundless.