MILLENNIUM EQUITY HOLDINGS, LLC, & others[1] *vs.* EDWARD
M. MAHLOWITZ.

Suffolk. January 5, 2010. - May 3, 2010.

Present: MARSHALL, C.J., SPINA, COWIN, CORDY, & GANTS, JJ.

*Abuse of Process. Malicious Prosecution. Damages,* Abuse of process,
Emotional distress. *Emotional Distress. Practice, Civil,* Frivolous action.

Discussion of the legal standard in an action for abuse of process. [636-637]
In a civil action involving a claim and counterclaim of abuse of process, the
   evidence was sufficient to support the judge's conclusion that an individual
   defendant-in-counterclaim's only motivation in bringing the abuse of
   process claim was his desire to remove the plaintiff-in-counterclaim as
   counsel for that defendant-in-counterclaim's wife in a divorce action
   [637-642]; further, the judge's conclusion that a second individual defend-
   ant-in-counterclaim was jointly liable for abuse of process was not clearly
   erroneous [642-644].
This court declined to reach issues raised on appeal regarding a claim of mali-
   cious prosecution where its judgment as to an abuse of process claim,
   standing alone, sustained the award of damages. [644-645]
In a civil action involving a claim and counterclaim of abuse of process, the
   judge properly awarded costs that the successful plaintiff-in-counterclaim
   incurred in defending the abuse of process suit, but this court remanded the
   matter to permit the judge to distinguish between damages for defending
   against the abuse of process claim, which were compensable, and costs
   expended for prosecuting the counterclaim, which were not [645-647];
   likewise, although the judge properly awarded damages for emotional
   distress without a showing of medical or psychiatric treatment, remand
   was necessary to permit further explanation of the basis for the calculation
   of the award [647-649]; finally, the judge properly awarded damages for
   harm to the plaintiff-in-counterclaim's reputation [649-650].
In a civil action, the judge did not abuse her discretion in declining to sanction
   two attorneys for an alleged violation of Mass. R. Civ. P. 11 (a). [650-652]

CIVIL ACTION commenced in the Superior Court Department on
May 27, 2004.

The case was heard by *Elizabeth M. Fahey,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Edward M. Mahlowitz (John L. Mason, Jr.,* with him), pro se.

[1]David Rabinovitz and Joseph P. Zoppo.

*Max D. Stern (Kenneth M. Resnik* with him) for David Rabinovitz.

*David L. Kelston* for Millennium Equity Holdings, LLC, & another.

*Robert S. Sinsheimer,* pro se, was present but did not argue.

*Isaac H. Peres,* pro se, was present but did not argue.

MARSHALL, C.J. The defendants-in-counterclaim, Millennium Equity Holdings, LLC (Millennium), and two of its partners, David Rabinovitz and Joseph P. Zoppo (collectively defendants), appeal from the decision of a Superior Court judge holding them liable for abuse of process and the malicious prosecution of Attorney Edward M. Mahlowitz.[2] The underlying dispute in this bitter litigation arose when Mahlowitz, representing Rabinovitz's wife in her divorce action against Rabinovitz, obtained an attachment on her behalf in the Probate and Family Court on Rabinovitz's interest in property owned by Millennium. The attachment was secured after the wife discovered by happenstance that Rabinovitz was concealing from her the imminent sale of the property.

The defendants made no attempt to dissolve or modify the attachment in the Probate and Family Court, despite ample opportunity and specific court rules permitting them to do so. Rather, eighteen months after the attachment had issued, and approximately one year after the attachment had been dissolved, Rabinovitz, Zoppo, and Millennium brought suit against Mahlowitz for abuse of process, malicious prosecution, and interference with contractual rights for obtaining the attachment. After failing to secure dismissal of the lawsuit, Mahlowitz counterclaimed against the defendants for abuse of process and malicious prosecution in connection with their suit against him.

After an eight-day, jury-waived trial in the Superior Court on the defendants' abuse of process claim,[3] and on Mahlowitz's counterclaims, the judge ruled in favor of Mahlowitz both on

---

[2]Millennium Equity Holdings, LLC (Millennium), and Joseph P. Zoppo are represented by the same counsel and have submitted a joint brief. David Rabinovitz is represented by separate counsel, and has filed a separate brief, which incorporates in part the Millennium-Zoppo brief. We consider any arguments made separately when we are required by our analysis to do so.

[3]The defendants' claim for abuse of process initially was based on two allegations that Mahlowitz abused process when (1) causing service of a subpoena on Millennium's bank and (2) obtaining and then declining voluntarily to

the claims of Millennium, Rabinovitz, and Zoppo against him, and on his counterclaims against them, awarding damages to Mahlowitz for the latter. She denied Mahlowitz's motion for sanctions pursuant to Mass. R. Civ. P. 11, 365 Mass. 753 (1974), against Robert S. Sinsheimer, the attorney representing Rabinovitz, and Isaac H. Peres, the attorney representing both Zoppo and Millennium at trial.

The Appeals Court reversed the judgment in favor of Mahlowitz on his counterclaims; it otherwise affirmed the trial judge in all respects. *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 73 Mass. App. Ct. 29 (2008). None of the defendants sought further appellate review. We granted Mahlowitz's application for further appellate review on his counterclaims against the defendants, as well as the judge's order denying his request for sanctions.

Contrary to the defendants' assertion that the judge's findings were replete with error, we first conclude that the record supports Mahlowitz's claim of abuse of process against Rabinovitz.[4] Specifically, the evidence, including the reasonable inferences therefrom, supports the judge's conclusion that the only motivation Rabinovitz had in bringing his lawsuit against Mahlowitz was to cause the removal of Mahlowitz as counsel for his wife in their divorce action. The judge also acted within proper bounds as a finder of fact in concluding that Zoppo and Millennium acted in concert with Rabinovitz to that same end. We thus affirm Mahlowitz's abuse of process claim against all of the defendants.

Mahlowitz's malicious prosecution claim is substantially similar to his abuse of process claim, and his damages under each are identical. Because we affirm the judgment on the abuse of process claim, we need not and do not reach Mahlowitz's malicious prosecution claim against the defendants.

remove the attachment. A judge in the Superior Court (different from the trial judge) dismissed the first of these two claims on summary judgment. The same judge also granted summary judgment for Mahlowitz on the defendants' claims for malicious prosecution and interference with contractual rights. Accordingly, the *only* claim to survive summary judgment was the defendants' allegation of abuse of process by reason of the ex parte attachment in the divorce action.

[4]We are fully in accord with the Appeals Court's observation that "the personal hostility between Mahlowitz and Rabinovitz and the bitter tactics they employed burdened the trial judge throughout these proceedings and made her job unfairly complicated." *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 73 Mass. App. Ct. 29, 31 n.8 (2008).

As to damages, we conclude that the judge made errors in her evaluation of some aspects of the damages that require remand for recalculation of two discrete issues pertaining to damages alone. Last, we agree with the judge that Mahlowitz has not met his burden of proving that Peres and Sinsheimer acted in bad faith in representing the defendants in their claims against Mahlowitz, and that he is not entitled to sanctions against them.

We turn now to a summary of the facts salient to Mahlowitz's counterclaims against the defendants, the only issue before us.

1. *Background.* We draw our factual summary from the findings of the judge, sitting without a jury, and the uncontested facts of record, all of which are supported by the trial record.[5] We reserve some details for later discussion where pertinent to our analysis.

a. *Millennium.* Millennium, a Delaware limited liability company, was formed in 2000 for the purpose of purchasing and developing a commercial property on Washington Street in the Brighton section of Boston (Washington Street property). Rabinovitz held at least a seventy-seven per cent ownership interest in the company. Zoppo was one of two additional shareholders, and Edward Stevenson was the other. The judge found that Rabinovitz "completely controlled" Millennium.

By February of 2002, Millennium was in financial difficulties. At the urging of its mortgagee, which declared Millennium's loan obligations in default, Millennium agreed to put the Washington Street property up for sale. Around September, 2002, the mortgagee directed Millennium to accept an offer by Fargo Street Associates, Inc. (Fargo), to purchase the property for $1.65 million. For tax reasons, Fargo needed to complete the sale by December 31, 2002.

b. *Rabinovitz divorce proceedings.* There was evidence at trial concerning Rabinovitz's conduct in the divorce proceed-

---

[5]We have reviewed every claim made by Rabinovitz (primarily) and the other two defendants that a specific finding of the judge is not supported, and conclude that, with the exception of a few findings not material to this appeal, her factual findings are fully supported by the record. We are informed by counsel that no proposed findings of fact or rulings of law were proffered by any party, and the docket does not reflect any such filings. See and compare Mass. R. Civ. P. 52 (a), (c), as amended, 423 Mass. 1402 (1996). The judge also did not have the benefit of a transcript of the trial when she issued her findings.

ings against his wife. It was admitted as relevant to Rabinovitz's state of mind at the time he filed his abuse of process and other claims against Mahlowitz.[6] We summarize that evidence.

In April, 2002, Rabinovitz's wife filed a divorce action against him in the Probate and Family Court. Mahlowitz represented her in that action. From its inception, and throughout its course, the divorce and postdivorce litigation was acrimonious. A major source of conflict was Rabinovitz's lack of good faith concerning the disclosure of marital assets and issues of child support. In her findings in this action, the Superior Court judge included a comprehensive but not an "exhaustive list" of all of Rabinovitz's misrepresentations concerning the marital estate. She found, for example, that Rabinovitz was "intentionally dishonest" and "deceitful" in the information he provided in his financial statements.[7] Among other things, he understated his income, failed to divulge the actual value of certain real property even when that value was known or readily ascertainable by him, concealed assets, failed to comply with court orders, and otherwise attempted to deprive his wife of her fair share of the marital assets.[8] As a consequence, the judge found, Mahlowitz

[6]On appeal, Rabinovitz maintains that testimony regarding his marital behavior and alleged fraud in the divorce action was inadmissible propensity evidence. We have reviewed the testimony in full and conclude that it was relevant to his state of mind at the time he filed the Superior Court action against Mahlowitz in May, 2004. In other words, the testimony was material to demonstrate that Rabinovitz used process "for an ulterior or illegitimate purpose," a necessary element of abuse of process. *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 407 (2002), quoting *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986).

[7]Rule 401 (a) of the Supplemental Rules of the Probate Court (2010) requires the parties in a divorce action to file with the court and deliver to the other party "a complete and accurate financial statement showing, insofar as possible, the assets, liabilities and current income and expenses of both parties and children involved in the case." The initial and any subsequent financial statement must "be signed by the party filing the same and shall be subject to the pains and penalties of perjury." Rule 401 (e).

[8]Among the judge's specific findings concerning Rabinovitz's conduct during the pendency of the divorce was that Rabinovitz misrepresented his assets in the financial statement he filed with the Probate and Family Court on March 5, 2003, which failed to report significant assets that he listed in a mortgage application he filed the following day with a bank. Rabinovitz also represented that a collection matter was of "undetermined" or "minimal" value, when in fact he was being paid $3,000 each month for it. He also omitted other sources of income. Similarly, he wrote that the fair market value of

was forced to bring multiple contempt actions against Rabino-
vitz, including for his failure to pay child support. Rabinovitz,
she found, "did not like that his wife had a competent, zealous
advocate," and "especially did not like" the contempt complaints.

Of particular relevance to this appeal, the judge found that
Rabinovitz did not inform his wife that Millennium had agreed
to sell the Washington Street property to Fargo for $1.65 million.
Even after Millennium signed the purchase and sale agreement
in November, 2002, and the sale was set to close in early
December, Rabinovitz did not do so. He concealed the impend-
ing sale and sales price of the Washington Street property on
his financial statements and interrogatories in the divorce action.[9]
The judge found that, notwithstanding Rule 411 of the
Supplemental Rules of the Probate Court (2010) (automatic
restraining order),[10] Rabinovitz had "no intention" of notifying
his wife or even his own divorce attorney about the potential
sale of the Washington Street property, in which he had a

several of his properties was "undetermined" even when he had already
entered agreements for the sale of such properties so that their value was
readily ascertainable and known by him. Notwithstanding Rabinovitz's objec-
tions to these findings, they are well supported in the record.

Because Rabinovitz and his wife had signed a stipulation allowing her to
obtain her own appraisals of the properties and because he had disclosed the
*existence* of such properties, Rabinovitz argues here that it fell to his wife to
gather any evidence she needed as to the value of those assets. The rules of
the Probate and Family Court, see, e.g., note 7, *supra*, require that Rabinovitz
make full and honest disclosures. He was also required to respond to inter-
rogatories about the value of his assets and income.

[9]On September 12, 2002, Rabinovitz answered interrogatories in the divorce
action indicating that the Washington Street property was valued at $1.485
million and that it was then in foreclosure. At the time, the property had been
appraised for $1.52 million, and there had been an offer and agreement to sell
the building for $1.65 million. The lender, while maintaining foreclosure as an
option, was allowing the defendants time to sell the building.

The judge did not fault Rabinovitz's own divorce attorney for any of these
failures to disclose. She found, rather, that Rabinovitz intentionally withheld
information from his attorney about the sale of the Washington Street property,
and that, when Rabinovitz filed his misleading answers to interrogatories in
September, 2002, his divorce attorney knew "only what Mr. Rabinovitz, in his
deceitful way, told him."

[10]Rule 411 (a) (1) of the Supplemental Rules of the Probate Court (2010)
provides, in relevant part: "Neither party shall sell, transfer, encumber, conceal,
assign, remove or in any way dispose of any property, real or personal,
belonging to or acquired by, either party," with exceptions not relevant here.

substantial ownership interest, nor did he have any intention of placing in escrow any profits he might gain from the sale. At his deposition on December 5, 2002, Rabinovitz refused to produce a copy of the purchase and sale agreement.

c. *Attachment.* In late November, or early December, 2002, as negotiations between Fargo and Millennium proceeded — negotiations about which Mahlowitz and Rabinovitz's wife knew nothing — Stevenson, the third Millennium shareholder, became embroiled in litigation with Rabinovitz and Zoppo over shareholder distribution of the expected proceeds from the sale to Fargo. On December 2, 2002, in the midst of his own litigation against Rabinovitz, Stevenson, in the judge's words, "dropped a dime" by informing the wife about the impending sale.[11] She notified Mahlowitz, who, until that time, had been under the impression that Rabinovitz's financial situation was "bleak." On December 3, 2002, on behalf of his client, Mahlowitz sought from the Probate and Family Court an ex parte attachment on Rabinovitz's interest in the Washington Street property. At the ex parte hearing, a transcript of which was entered in evidence, Mahlowitz represented to the probate judge that he sought to attach only Rabinovitz's interest in the Washington Street property and had no intention of interfering with Millennium's sale of the property.[12] The probate judge allowed the motion. In accordance with Mahlowitz's representations to the judge, the attachment placed a lien not on Millennium, but on the "right, title and interest to the amount of

---

[11]It may be inferred that Stevenson would not have telephoned the wife but for the fact that he either knew or suspected that Rabinovitz was trying to conceal the sale of the Washington Street property from her.

[12]One relevant portion of the ex parte hearing is as follows:

THE JUDGE: "So what you are asking the court to do is attach just [Rabinovitz's] interest?"

MR. MAHLOWITZ: "That is correct, Your Honor. You do not want to interfere with the sale, obviously, as far as, on information and belief, I believe my client would represent as far as she knows and there is no allegation it is not a fair selling price."

Mahlowitz testified at trial, and the judge credited his testimony, that he "was not intending to interfere with the sale" by seeking the attachment, and that his client "was terrified of losing all the assets."

$500,000.00 of David I. Rabinovitz standing in the name of Millennium Equity Holdings, LLC." At the time the attachment was recorded, the Millennium shareholders had yet to resolve their infighting, and there was no firm date set for the closing.[13]

On Tuesday, December 3, Mahlowitz sent facsimile copies of the attachment and supporting documents to Rabinovitz's divorce counsel and to Millennium's real estate counsel, Peter Fenn. At Rabinovitz's deposition in the divorce case on Thursday, December 5, Rabinovitz stated that he had hired a bankruptcy attorney, Herbert S. Weinberg, to file a voluntary bankruptcy for Millennium in order to expedite and complete the sale of the Washington Street property. Rabinovitz did not ask that the attachment be removed or indicate that he would challenge it in court.

However, the following day, December 6, Fenn sent a facsimile letter to Mahlowitz demanding that he voluntarily dissolve the attachment. Fenn stated that, if the attachment were not removed, he would appear in Probate and Family Court on Monday, December 9, to seek a dissolution.[14] Mahlowitz appeared in the Probate and Family Court at the requested time and waited for several hours. Fenn neither appeared nor notified Mahlowitz that he would not do so. None of the defense attorneys appeared that day or any at other time to request that the attachment be modified or dissolved.

Also on Monday, December 9, Weinberg sent a facsimile to Mahlowitz demanding that he voluntarily discharge the attachment. Mahlowitz declined to do so. The judge found that had Mahlowitz voluntarily agreed to dissolve the attachment, he would have committed a breach of his obligation to his client to secure

---

[13]Ada Wong, a principal of Fargo, testified that several complications impeded the sale. She emphasized Rabinovitz's dispute with his former real estate broker and lawsuits and infighting among the Millennium shareholders.

[14]Rabinovitz's divorce counsel, who had experience with the Probate and Family Court judge on this matter and was representing Rabinovitz's interests in the divorce case, was not sent a copy of Attorney Peter Fenn's letter. Rabinovitz claimed at trial that neither he nor his attorneys (he did not specify who) had time to seek to have the attachment dissolved. The judge did not credit this testimony. In any event, an attachment can be challenged on short notice, sometimes within hours. See Mass. R. Dom. Rel. P. 4.1 (g) (2010) (providing opportunity for dissolution or modification of ex parte attachments on short notice).

her claim to an equitable division of the marital assets and payments of any future support obligations. She concluded that obtaining the attachment was "reasonable" in the circumstances confronting Mahlowitz and his client. She also found that Mahlowitz properly made use of the attachment to protect his client.

d. *Bankruptcy proceedings.* On Thursday, December 12, Millennium voluntarily filed for bankruptcy protection. More than one week had passed, but there had been no effort to remove the attachment. As part of its bankruptcy filings, Weinberg submitted a petition to sell the Washington Street real estate "free and clear" of liens. In that pleading, Weinberg advised the Bankruptcy Court that, with respect to the attachment obtained by Mahlowitz on Rabinovitz's share of any proceeds, "[t]he debtor believes this attachment is of *no legal consequence* to Millennium because it is not against Millennium" (emphasis added).

The record shows that Fargo, the original buyer, purchased the Washington Street property from the bankruptcy trustee on June 2, 2003, for $1.45 million, $200,000 less than the earlier contract price.[15]

e. *The defendants' suit against Mahlowitz.* In the spring of 2004, almost one year after the Washington Street property had been sold and the attachment had been dissolved — but in the midst of contentious postdivorce proceedings — Rabinovitz threatened his wife that she would need new counsel because he would be suing her lawyer.[16] He also told her that he intended to move to disqualify Mahlowitz from representing her. In May, 2004, with Rabinovitz and his now former wife still engaged in litigation in the Probate and Family Court, the defendants commenced an action against Mahlowitz in the Superior Court. As noted earlier, a judge in the Superior Court dismissed their

---

[15]The judge found that the $200,000 price reduction "was caused by Millennium's loss of a tenant, that Fargo was able to buy the property on the date of the scheduled foreclosure auction, and because Fargo was not willing to pay what it had in 2002 as it had not been able to close for IRS 1031 tax benefits by December 31, 2002."

[16]The record shows that there was a divorce settlement on March 5, 2003, but that Rabinovitz and his wife remained for some years engaged in contentious postdivorce litigation around monetary issues through, inter alia, contempt motions.

malicious prosecution and contractual interference claims,[17] a judgment from which the defendants did not appeal. Their remaining abuse of process claim alleged that Mahlowitz abused process only by obtaining the attachment for the ulterior purpose of gaining leverage in the divorce negotiations. Rabinovitz, representing himself, subsequently moved in the Probate and Family Court to have Mahlowitz disqualified, arguing that his abuse of process action against Mahlowitz created a conflict of interest for Mahlowitz in the divorce proceedings.

We now consider the defendants' challenge to the judgment in favor of Mahlowitz on his counterclaims against them.

2. *Abuse of process.* a. *Legal standard.* To sustain an abuse of process claim, the fact finder must find that process was used "to accomplish some ulterior purpose for which it was not designed or intended, ·or which was not the legitimate purpose of the particular process employed." *Quaranto* v. *Silverman*, 345 Mass. 423, 426 (1963), quoting *Gabriel* v. *Borowy*, 324 Mass. 231, 236 (1949). The three elements of the cause of action are that "process" was used, for an ulterior or illegitimate purpose, resulting in damage. *Gutierrez* v. *Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 407 (2002), quoting *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986).

The defendants do not claim that the judge applied an improper legal standard. Rather, the defendants' challenge is in most part an attack on the judge's factual findings on the "ulterior or illegitimate purpose" element of the claim. Stripped of circumlocution, the essence of their argument is that it was clearly erroneous for the judge to find that, when they filed suit against Mahlowitz for what they alleged was *his* illegitimate motive in obtaining the attachment, they were acting only with the illegitimate motive of having Mahlowitz disqualified from the divorce proceedings.

To prevail on appeal on the basis of an assault on a judge's factual findings is no easy matter, for we accept the judge's findings of fact as true unless they are "clearly erroneous." *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). She had the opportunity to view the witnesses' demeanor, as well as to listen to their testimony. In this fact-intensive case, she was in the

---

[17]See note 3, *supra.*

best position to assess the credibility of the witnesses and to determine the facts. See *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977). We will uphold her findings unless we have a "definite and firm conviction that a mistake has been committed." *Kendall* v. *Selvaggio, supra* at 620-621. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 510 (1997), quoting *T.L. Edwards, Inc.* v. *Fields*, 371 Mass. 895, 896 (1976) ("we do not 'review questions of fact found by the judge, where such findings are supported' on *any reasonable view of the evidence*, including all rational inferences of which it was susceptible" [emphasis added]). "It is the appellant's burden to show that a finding of fact is clearly erroneous." *Demoulas* v. *Demoulas Super Mkts., Inc., supra* at 509. It is not sufficient to challenge the judge's findings by reciting other evidence in the record that she may not have credited. Applying those settled standards, we consider in turn the judge's rulings as to each of the defendants on Mahlowitz's abuse of process claim.

b. *Rabinovitz*. The judge concluded that the "only" motivation Rabinovitz had for bringing the abuse of process action against Mahlowitz was his dislike of Mahlowitz's zealous representation of the wife and his desire to remove Mahlowitz as her divorce counsel. There was no error.

Whether a person has grounds to bring a claim may of course be relevant in assessing whether he had an ulterior purpose. See *Fishman* v. *Brooks*, 396 Mass. 643, 652 (1986) ("That the person commencing the litigation knew or had reason to know his claim was groundless is relevant, however, as tending to show that the process was used for an ulterior purpose"). Here, Rabinovitz's abuse of process claim rests on, at best, thin ground. Rabinovitz argues that he had reason to believe at the time he filed suit against Mahlowitz that the attachment had prevented the sale of the Washington Street property to Fargo for $1.65 million in December, 2002.[18] This argument avails him nothing. First, his claim of monetary damages is most pertinent to his

---

[18]Rabinovitz argues that, because he had a reasonable belief that the sale was still pending on December 4, 2002, when the attachment was recorded, he had grounds for claiming that the attachment "killed the sale" and that Mahlowitz was responsible for its demise. The judge found that the sale had "fallen apart" by Thanksgiving, 2002, and that the attachment did not derail the sale. She did not, however, make an explicit finding whether Rabinovitz *knew* the

dismissed claim for tortious interference with business relations, from which Rabinovitz did not appeal. It is also pertinent to the element of damages for abuse of process. On its own, however, it does not provide a sound basis for any contention that Mahlowitz had an ulterior or illegitimate motive in seeking and then not discharging the attachment.

To the contrary, with respect to that essential element of his abuse of process claim, Rabinovitz claimed one, *and only one*, allegation of impermissible motive for obtaining and maintaining the attachment: that Mahlowitz was seeking leverage against Rabinovitz in the divorce action.[19] Yet seven days of testimony and eighty-eight trial exhibits uncovered not one single instance in which Mahlowitz leveraged or attempted to leverage the attachment in the divorce action. Rabinovitz's appellate brief makes the leverage argument in terse, conclusory, and speculative fashion, without citing any support from the record. The judge found that no such evidence existed, and our own review of the record identifies none.

Rabinovitz is equally unpersuasive in his attempt to demonstrate that he had good reason to believe that the attachment, even if it was not actually used as "extortion" in the divorce proceeding, was obtained and maintained for that purpose. The unambiguous language of the attachment is narrow: it places a lien on Rabinovitz's interest only, and does not run against any other entity. Rabinovitz understood as much because, as noted

---

sale had fallen through by Thanksgiving. He claims that certain testimony of Ada Wong, Fargo's principal, and testimony of Attorney Fenn that the judge excluded supported or would have supported his assertion that, when he filed suit against Mahlowitz, he believed in good faith that Millennium's interests had been harmed by the attachment.

Even if Rabinovitz is correct in his interpretation of Wong's testimony and in his claim of error in the exclusion of certain portions of Fenn's testimony, these circumstances would not have changed, and need not have changed, the judge's ultimate conclusions that Rabinovitz filed a baseless abuse of process claim against Mahlowitz. As we explain *infra*, even if Rabinovitz suffered *damages* because of the attachment, that is not a sufficient basis for an abuse of process claim against Mahlowitz, which requires evidence of an ulterior motive.

[19]On the element of ulterior motive, the defendants' complaint alleged that "Mahlowitz caused the ex parte attachment against Millennium's property and refused to remove it *for the ulterior purpose of threatening, coercing and extorting Rabinovitz to pay Mrs. Rabinovitz money rather than to obtain security*" (emphasis added).

earlier, on December 12, 2002, Millennium's bankruptcy attorney represented to the Bankruptcy Court that the attachment was "of no legal consequence" to Millennium because it was not against Millennium.[20] Rabinovitz is judicially estopped from now claiming that he believed in May, 2004, long after the property had been sold and the attachment dissolved, that Mahlowitz had placed an unlawful attachment on Millennium's property to obtain leverage in the divorce action. See *Otis* v. *Arbella Mut. Ins. Co.*, 443 Mass. 634, 642 (2005).

To be sure, the evidence indicates that Mahlowitz knew from communications with Rabinovitz's attorneys that the lien might cause Millennium problems with the sale, even if it had no "legal consequence," as Weinberg had represented. But knowledge of this potential effect of the attachment does not prove that Mahlowitz obtained and maintained the attachment for the ulterior purpose of "coercing and extorting" Rabinovitz to pay money to his wife. See note 19, *supra*. Encumbrances on property may make it difficult for property to be sold. That circumstance, without more, does not amount to an abuse of the attachment process.[21]

Rabinovitz and Millennium had separate experienced real estate, divorce, and bankruptcy counsel, presumably all protecting his and Millennium's interests. We may not ignore, as the trial judge did not ignore, that, had Rabinovitz in fact been concerned that the attachment was impeding the sale of the Washington Street property or that its purpose was to "extort" him to pay money to his wife, he had ample opportunity to remove the alleged roadblock by seeking a clarification, modification, or dissolution of the attachment in the Probate and Family Court. He did not do so. On the other hand, Rabinovitz's assets could have disappeared overnight, and Mahlowitz needed

---

[20]At trial, bankruptcy counsel Herbert Weinberg testified, in the judge's words, "Probate Court restraining orders are, in his experience, ignored/disregarded by counsel in Bankruptcy Court."

[21]The fact that the attachment was obtained, as Rabinovitz argues, at the "eleventh hour" and was for an "excessive" amount does not make out a case that the attachment was brought to coerce Rabinovitz to pay money to his wife. Such a motive is lacking when Mahlowitz reasonably believed the undisclosed sale was imminent and Rabinovitz refused to divulge details of the transaction, including the amount that Rabinovitz would receive as a seventy-seven per cent shareholder of the corporation.

to ensure that his client's interests were protected, as he testified at trial. Rabinovitz did not offer to put any proceeds he received in escrow. Rabinovitz's suggestion that Mahlowitz should have dissolved the attachment without such assurances, and that his failure to do so is evidence of improper motives, essentially shifts the burden to Mahlowitz to accommodate Millennium's interest, rather than that of his client.[22]

In addition to Rabinovitz's failure to produce any evidence of Mahlowitz's misuse of the attachment process in the divorce action, the judge found and the record demonstrates affirmatively that Rabinovitz brought his claim against Mahlowitz in order to disqualify him from representing his wife. Tellingly, Rabinovitz did not file the suit when the property was sold; almost one year elapsed during which Rabinovitz was subject to contempt actions as Mahlowitz vigorously represented the wife in the Probate and Family Court. Then, after filing the action in the Superior Court, Rabinovitz promptly filed a motion in the Probate and Family Court to disqualify Mahlowitz.

Rabinovitz takes the position that his continued pursuit of the Superior Court action for years after the disqualification motion had been denied demonstrates that he believed his suit had merit, and was not for an improper purpose. To the contrary, Rabinovitz's inattention to the abuse of process suit belies his claim of legitimate motive. The docket sheet reflects that after Rabinovitz was unsuccessful in his effort to disqualify Mahlo-

---

[22]The Appeals Court determined that Rabinovitz had "ample reason" to believe that Mahlowitz obtained and maintained the attachment "not to secure assets for his client, but to gain negotiating leverage in the divorce case," a factual finding by the Appeals Court not consistent with the findings of the trial judge, and one with which we do not agree after carefully reviewing the record. *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 73 Mass. App. Ct. 29, 43 (2008). In support, the Appeals Court stated that Mahlowitz "refused to limit the attachment to Rabinovitz's interest." *Id.* at 41. But the actual language of the attachment, Millennium's own admission to the Bankruptcy Court, and Mahlowitz's testimony at trial all demonstrate that the attachment was limited to Rabinovitz's interest. The Appeals Court noted that it did not "intend to chill careful and appropriate use of attachment requests" in domestic relations cases. *Id.* at 34 n.11. The holding that an attorney who places a routine attachment in the course of a divorce proceeding may properly be subject to an abuse of process action would in fact chill the practice, leaving a party in a divorce proceeding vulnerable to the tactics of spouses who seek improperly to conceal their marital assets.

witz, the abuse of process suit lay dormant; Rabinovitz and the other defendants conducted no formal discovery, nor did they engage in any other substantive action to advance or develop their claims, except to defend against Mahlowitz's motions.

Moreover, it is reasonable to infer that Rabinovitz maintained the suit because he thought it would appear suspicious if he voluntarily dismissed it soon after his disqualification motion had been denied, nor could he reasonably have done so once Mahlowitz filed his counterclaim in October, 2004. It is also reasonable to infer that Rabinovitz knew that, so long as his claim against Mahlowitz was pending, it would cause Mahlowitz expense and distress, as the judge found, thereby potentially interfering with Mahlowitz's ability to represent the wife vigorously, among other things.

Rabinovitz contends that the judge's finding that he wanted Mahlowitz out of his way was predicated on her erroneous belief that the sale of the Washington Street property, owned by Millennium and not himself individually, violated the automatic restraining order of the Probate and Family Court.[23] The judge's error concerning the reach of the automatic restraining order, he maintains, laid the groundwork for a raft of unsupportable inferences she drew: that Rabinovitz "intentionally did not authorize any lawyer to go into court" to seek to vacate the attachment because "he was concerned that he would then be found in contempt of the Probate and Family Court's Automatic Restraining Order, as he had not provided any notice to the Court or to his wife of the sale" of the Washington Street property; that Rabinovitz "especially" disliked Mahlowitz's practice of filing contempt petitions and that Rabinovitz therefore wanted to disqualify Mahlowitz from representing the wife in the divorce action. Even assuming Rabinovitz is correct that the impending and ultimate sale did not violate the automatic restraining order,

---

[23]There is, of course, a legal distinction between the individual and the corporate entity. Here, Millennium was a closely held corporation that Rabinovitz "completely" controlled. In such circumstances, the distinction between the individual and the corporation may be narrower. See *Attorney Gen.* v. *M.C.K., Inc.*, 432 Mass. 546, 555 (2000), citing *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968) ("The doctrine of corporate disregard is an equitable tool that authorizes courts, in rare situations, to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice").

an issue we need not decide, the judge's findings are not undermined.

Rabinovitz does not dispute, nor could he, that his interest in the Washington Street property was a marital asset. See *Rice* v. *Rice*, 372 Mass. 398, 400 (1977) ("A party's 'estate' by definition includes all property to which he holds title, however acquired. [General Laws c. 208, § 34,] gives the judge discretion to assign to one spouse property of the other spouse whenever and however acquired"). Automatic restraining order or not, Rabinovitz's concealment of marital assets in the divorce action was unlawful. Rabinovitz had every reason to be concerned that Mahlowitz would bring to the Probate and Family Court's attention any instance of financial deception Rabinovitz might have engaged in, including his failure to inform his wife or the judge of the sale of a property in which he had a significant ownership share, which would have been revealed had Rabinovitz moved to have the attachment lifted. Accordingly, we affirm the judge's finding that Rabinovitz abused process.

c. *Zoppo and Millennium.*[24] The judge attributed Rabinovitz's illegitimate motives to Zoppo, holding him jointly liable for abuse of process. Although a closer question, on review of the entire trial record we cannot conclude that the judge's determination is clearly erroneous. See *Demoulas* v. *Demoulas Super Mkts. Inc.*, 424 Mass. 501, 510 (1997).

Zoppo's primary argument is that the evidence at trial demonstrated that he had a legitimate reason at the time he filed the abuse of process claim against Mahlowitz for believing that the attachment was wrong, and that it had injured him, as an owner of Millennium. In particular, he argues that he understood that the attachment had scuttled the imminent sale of the Washington

---

[24]Millennium and Zoppo, in their joint brief on appeal, state that because Millennium has been liquidated in a bankruptcy under chapter 7 of the United States Bankruptcy Code, "there is little purpose in arguing here separately on its behalf, other than to say that the arguments put forward for Zoppo apply equally to it." We reject the arguments advanced on behalf of Zoppo, as we discuss *infra*. To the extent that they apply to Millennium, they are also unsuccessful. As to Millennium, the judge found that Rabinovitz exercised nearly total control and used the company for his own personal ends. Millennium does not contest these findings, which support the judge's conclusion that Millennium abused process against Mahlowitz. We discern no error as to Millennium.

Street property, propelled Millennium into bankruptcy, and resulted in Fargo's buying the property at a reduced rate. This contention is essentially an argument that Zoppo believed that he was damaged by the attachment. Damages, however, are only one element of an abuse of process claim; even if damages are shown, Zoppo still needed to show that Mahlowitz acted with an illegitimate motive, the crux of an abuse of process claim. As we explained above with respect to Rabinovitz, there was nothing about Mahlowitz's obtaining an attachment on Rabinovitz's assets that could have given Zoppo sound reason to believe that Mahlowitz was acting to gain leverage in the divorce proceedings.

The question remains, then, why Zoppo joined Rabinovitz in suing Mahlowitz for abuse of process. See *Fishman* v. *Brooks*, 396 Mass. 643, 652 (1986). It could have been that Zoppo innocently, albeit mistakenly, believed that his abuse of process claim had merit. But given the weakness of the claim, the judge was not wrong to look to other evidence in the record suggesting that Zoppo had an ulterior motive. The judge determined, and the record supports, that Zoppo was "basically Mr. Rabinovitz's puppet for purposes of this case," and was motivated by "the financial dealings and relationship he has had with Mr. Rabinovitz over the years" to assist Rabinovitz with gaining advantage in his divorce case by eliminating Mahlowitz.[25] Zoppo vigorously disputes these findings on appeal. However, when he had the opportunity to present his case to the judge, under oath, he declined to do so.

Specifically, Zoppo did not testify at trial, and from this refusal the judge drew an adverse inference against him regarding his motives for bringing suit against Mahlowitz.[26] Zoppo

---

[25]The judge found that Rabinovitz knew that Zoppo had been misusing Millennium's funds by treating them, without authorization, "as his own personal piggy bank" to pay for expenses of another business, to pay his personal income taxes, and to pay his personal attorney. Because Rabinovitz was aware of this misdealing, she concluded that Rabinovitz had Zoppo "over a barrel," and Zoppo needed to maintain his relationship with Rabinovitz as a matter of "self-preservation."

[26]In her decision issued on May 16, 2006, the judge noted that Zoppo did not testify at trial, but did not explicitly state that she was drawing a negative inference against him for his failure to do so. On Zoppo's motion for judgment notwithstanding the verdict, the judge clarified that she had drawn an adverse inference from Zoppo's failure to take the stand when in fact he was available to testify at trial.

argues that because there was no evidence against him presented by Mahlowitz's witnesses, he had no reason to testify, and the judge had no basis for drawing adverse inferences. See *Mitchell* v. *Silverstein*, 323 Mass. 239, 240 (1948), quoting *Bishop* v. *Pastorelli*, 240 Mass. 104, 107 (1921) (no inference may be drawn from failure to testify until "a case adversely affecting [the witness's] interests [has] been shown"). He fails to recognize that evidence of his financial improprieties and his complicit relationship with Rabinovitz *was* admitted at trial and *was* evidence against him. Rabinovitz himself implicated Zoppo in his lawsuit by furnishing evidence of the partners' long-standing friendship and history of financial dealings and Zoppo's own misuse of Millennium's funds. Zoppo was present during the trial, and he heard the evidence against him. He was available to testify. He failed to do so.

Indeed, Zoppo failed to take the stand even after the judge, in denying his counsel's motion for a directed verdict before closing arguments, explained that when taking the evidence in the light most favorable to Mahlowitz, she could find that Rabinovitz and Zoppo were in "cahoots" as to their lawsuit and otherwise brought the case without a reasonable basis. See *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 316 (1922) ("In the face of such accusations [of fraud], men commonly do not remain mute but voice their denial with earnestness, if they can do so with honesty. Culpability alone seals their lips"). This strong message to Zoppo went unheeded. In such circumstances, the judge did not err in drawing a negative inference as to whether Zoppo abused process. Combining the evidence of Zoppo's close relationship with Rabinovitz, as well as his financial misdealings, with the negative inference drawn from Zoppo's failure to testify in the face of evidence against him, we cannot say that the judge's finding was clearly erroneous. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, *supra*.

3. *Malicious prosecution.* The defendants also appeal from the judge's ruling against them on Mahlowitz's malicious prosecution claim. We need not reach this issue because in the circumstances of this case the judgment as to abuse of process standing alone sustains the award of damages, which we describe below. In actions for both abuse of process and for malicious

prosecution, the law is "maliciously used for a purpose for which it is not intended," and the party injured is "allowed to recover all such damages as are the natural and probable consequences of the action complained of." *Malone* v. *Belcher*, 216 Mass. 209, 212 (1913) (discussing damages for abuse of process based on malicious attachment). See 2 D.B. Dobbs, Torts § 440, at 1241 (2001) (damages essentially same for malicious prosecution and abuse of process). Here, the judge's decision indicates that Mahlowitz suffered the same consequences from the suit regardless of whether it constituted an abuse or process or malicious prosecution. Either way, the wrongful action attacked Mahlowitz's integrity as an attorney and caused him personal and professional damages.[27] Accordingly, we need only and do affirm on the abuse of process claim. We now address the issue of damages.

4. *Damages.* The defendants challenge as factually and legally deficient the judge's damages award to Mahlowitz for (1) the costs of defending against the improper action; (2) the emotional harm he suffered; and (3) the harm to his reputation. Each of these items is a compensable category of damages for an abuse of process claim so long as the specific damages are affirmatively proved. See *Swartz* v. *Brockton Sav. Bank*, 318 Mass. 66, 69 (1945) (denying claim for abuse of process because plaintiff failed to prove "essential fact of damage"); *Malone* v. *Belcher*, *supra* (compensation for "injury to business, reputation and feelings" and "all such damages as are the natural and probable consequences of the action complained of" available for abuse of process); R.W. Bishop, Prima Facie Case § 41.1 (5th ed. 2005). We review each category in turn.

a. *Costs incurred in defending suit.* The "natural and probable" consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge. As such, fees for defending such a lawsuit are considered compensatory damages, not attorney's fees. See *American Velodur Metal, Inc.* v. *Schinabeck*, 20 Mass. App. Ct. 460, 470 (1985) (in addition to emotional distress, plaintiff in abuse of process action

---

[27]In other circumstances, of course, damages may be different depending on whether they stem from abuse of process, a malicious prosecution, or both. Nothing in our decision should be read to suggest otherwise.

could recover for "the necessity of incurring counsel fees to defend against the claim" and the expenditure of plaintiff's "time in many consultations with counsel about the defense"); 2 D.B. Dobbs, *supra* at § 440, at 1242 (damages for misuse of civil process include "reasonable attorney fees and other expenses incurred in defending the wrongful criminal or civil litigation").[28],[29]

Here, the judge found that, as a result of the "wrongfully filed complaint," Mahlowitz spent his own time doing work on the case and incurred the cost of hiring Attorney John L. Mason to represent him. The defendants' arguments notwithstanding, the judge's theory of abuse of process damages was correct. We conclude that she erred, however, in not distinguishing between Mahlowitz's damages for defending the lawsuit, which are compensable, and the costs expended in prosecuting his own counterclaims, which are not. See *Technical Computer Servs., Inc.* v. *Buckley*, 844 P.2d 1249, 1256 (Colo. Ct. App. 1992), citing McCormick, Damages § 66 (1935) ("a claimant in a malicious prosecution or abuse of process action can recover attorney fees incurred in defending against the prior wrongful litigation; however, under the general rule, he or she cannot recover attorney fees incurred in bringing the malicious prosecution or abuse of process action itself"), 2 D.B. Dobbs, Torts, *supra* at § 440, at 1242 (recovery does not include counsel fees resulting from "plaintiff's own counterclaims in the original suit"). The judge should have based her award only on the costs necessary for Mahlowitz to defend against the claims of the defendants. Accordingly, we vacate the award of $151,653.30 in damages and remand for a rehearing and the possible recalculation of these damages. We order that the case be remanded

[28]Although the judge refers to a "fee award," she awarded the "fees" as compensatory damages on the judgment. Even assuming the judge erred in awarding the legal costs of defending the judgment as "attorney's fees," the award could be properly considered as damages, and there is no error in her so compensating Mahlowitz. See *American Velodur Metal, Inc.* v. *Schinabeck*, 20 Mass. App. Ct. 460, 470 (1985).

[29]Because the costs spent on defending against the wrongful action are compensable as damages in an abuse of process action, we need not address the judge's determination that in the alternative attorney's fees were available pursuant to G. L. c. 231, § 6F, or pursuant to G. L. c. 231, § 59H. See also note 37, *infra*.

to the same trial judge, given her familiarity with the case and the narrow issue for decision.

To avoid any misunderstanding, we add these comments. The judge found that Attorney Mason's fees in representing Mahlowitz were $55,859.55 and $5,793.75 in costs, for a total of $61,653.30. She expressly found his billable hours, charges, and rates to be "reasonable." We affirm the judge's finding that the billable rates and hours for Mason's legal work were reasonable. Therefore, on remand the judge need only determine the amount of time that Mason spent defending the defendants' suit against Mahlowitz, and adjust the award for this category of damages accordingly. As to Mahlowitz's own billable hourly rate and the hours he spent on the Millennium litigation, the judge credited his testimony that his billable hourly rate was $300, and that he had spent 300 hours on the Millennium matter. That finding is sound. The judge did not find explicitly that Mahlowitz's hourly rate was reasonable or that the number of hours spent was reasonable, as she had done with Mason. However, that is implicit in her award to Mahlowitz of damages of $90,000 for the time he spent on the litigation. Here too on remand the judge need only determine the amount of time that Mahlowitz spent *defending* the defendants' lawsuit against him, and adjust the award of damages accordingly.

b. *Emotional distress.* The record fully supports that Mahlowitz suffered emotional distress as a result of the improper lawsuit. In particular, Mahlowitz offered potent testimony, constituting several dozen pages in the transcript, as to the effect of this lawsuit on his emotional state and on his personal and professional relationships. Mahlowitz testified that his distress began when his wife became distraught after discovering the court summons in their mailbox. From this point on, he became "[e]xtremely" upset each time an event was scheduled in the case. More disturbing to him was having to discuss the case with members of his family, several of whom are lawyers. The emotional pain of the case made it "difficult to communicate with clients" and to "maintain focus and to adequately represent those who ask" for help. He had difficulty sleeping. The fact that he had obtained a routine attachment in a divorce proceeding in order to protect his client and yet was subject to suit for malicious prosecution, abuse of process, and interference with

contractual relations only added to his already significant emotional distress.

The defendants do not refute the evidence of Mahlowitz's emotional distress. Rather, they argue that the damages for emotional distress must be vacated because Mahlowitz made no showing of medical or psychiatric treatment. We disagree. A claim for abuse of process is distinguishable from an action for intentional or negligent infliction of emotional distress, where physical manifestation of emotional distress is generally required as an element of the tort. See *American Velodur Metal, Inc.* v. *Schinabeck*, 20 Mass. App. Ct. 460, 470 (1985); Restatement (Second) of Torts § 905 comment c (1979).[30] We have not required a showing of physical harm for damages resulting from abuse of process, and we decline to do so here. See, e.g., *American Velodur Metal, Inc.* v. *Schinabeck, supra* (parties may recover for mental suffering, distress, and harassment if caused by abuse of process); *Titcomb* v. *Bay State Grocery Co.*, 254 Mass. 599, 601 (1926), citing *Malone* v. *Belcher*, 216 Mass. 209 (1913) (damages may be awarded for injury to "feelings" in abuse of process claim).

We do, however, conclude that there was there was error in the judge's calculation in the awarding of damages for emotional distress. The judge awarded Mahlowitz $150,000 in damages ($250 per day for 600 days) for emotional distress.[31] She did

---

[30]The defendants' reliance on *Tosti* v. *Ayik*, 394 Mass. 482 (1985), *S.C.*, 400 Mass. 224, cert. denied sub nom. *United Auto Workers, Local 422* v. *Tosti*, 484 U.S. 964 (1987), is unpersuasive. In that case, this court considered an award of damages to a prevailing plaintiff in a libel action. The court recognized that "harm to reputation and mental suffering . . . are compensable where the awards are supported by competent evidence." *Id.* at 498. In that case, however, the evidence establishing such damages was "sparse" and consisted mainly of testimony by the plaintiff's wife that the plaintiff had been "shook up." *Id.* at 498-499. The court noted that there was "no suggestion that the plaintiff received any medical or psychiatric treatment as a result of the libel." *Id.* at 499. But the fact that the plaintiff had not received such treatment was not a bar to his relief; it suggested only that the amount of damages awarded by the jury was excessive. Accordingly, the court remanded the case solely on the issue of excessive damages. *Id.*

[31]The judge's decision mistakenly stated that Mahlowitz brought a counterclaim for intentional infliction of emotional distress, and the judge found that he satisfied this claim. Because this erroneous finding did not affect the judge's calculation of damages, and because there are other claims that support the award of damages, this error was harmless.

not provide an explanation for why she determined that Mahlowitz should be awarded $250 dollars per day, or why 600 days was the appropriate measure of duration. We can identify nothing in the record that provides any certain explanation for her calculations. On remand, the judge shall explain her calculation of damages for emotional distress. By remanding this aspect of the case, we do not suggest that the basis of the judge's calculations is erroneous, but only that her findings do not explain the basis for her calculations. It may well be that her explanation will support both the $250 per day and the 600 days' duration, or the judge may adjust that award to reflect her written explanation.[32]

c. *Reputation.* The defendants further argue that the judge erred in awarding Mahlowitz $250,000 for harm to his reputation based on the publicity about the suit in Massachusetts Lawyers Weekly. We again discern no error.

We are in full accord with the judge's observation that "an attorney is not much more than his reputation and that once sullied it is very difficult . . . to undo the tarnish." The judge found that several pieces published about the lawsuit in Massachusetts Lawyers Weekly "damaged Mr. Mahlowitz, both in the esteem with which he is held in the community of divorce lawyers and judges in the Probate Court." In particular, Mahlowitz testified that since the appearance of the Massachusetts Lawyers Weekly items, he had not received any appointments from Probate and Family Court judges in Middlesex County, who had often appointed him in the past. This evidence alone is compelling: we cannot imagine a more damaging result for an attorney than the loss of his credibility on the part of judges before whom he routinely must appear.

The judge additionally found, and we agree, that the publications in Massachusetts Lawyers Weekly were a foreseeable consequence of the lawsuit, and that the adverse publicity against Mahlowitz was "orchestrated," at least in part, by Rabinovitz. Among the four items published in that newspaper, one was a letter to the editor from Rabinovitz that sharply

---

[32]Our remand is not an invitation to the parties to pursue further arguments about the extent of Mahlowitz's emotional distress or the appropriateness of the judge's award of damages for that harm. We remand solely so that the judge may clarify the basis in calculating the amount of her award on this point.

criticized Mahlowitz's conduct as dishonest and suggested that he had lied to a judge in the Probate and Family Court. Although one article was arguably in favor of Mahlowitz — remarking that it was "scary" that lawyers could be sued for abuse of process when placing ordinary liens in the course of divorce proceedings — the judge's finding that the widespread publicity about the case in the legal community damaged Mahlowitz's reputation is well supported.[33]

The defendants nevertheless assert that Mahlowitz cannot recover for harm to reputation because he did not prove "real business loss" or other pecuniary harm resulting from damage to his reputation. We do not discern authority for such a requirement in this context, nor have the defendants directed us to any relevant source. In the context of defamation, we have explained that actual injury is "not limited to out-of-pocket loss" but instead includes "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 861 (1975). Here, Mahlowitz can recover for intangible harm to his reputation separate from and in addition to any loss of business or other pecuniary harm he may have suffered.[34] See *Titcomb* v. *Bay State Grocery Co., supra*; *Malone* v. *Belcher, supra* at 212. See Restatement (Second) of Torts § 681(b), (d) (1977) (stating that damages for unjustifiable civil proceedings include compensation for both specific pecuniary harm and harm to reputation); 2 D.B. Dobbs, Torts § 440, at 1242 (2001) ("Intangible damages recoverable [for abuse of process] include damages for harm to reputation . . .").[35] There was no error.

5. *Sanctions pursuant to Mass. R. Civ. P. 11.* There is no

[33]Massachusetts Lawyers Weekly ranked the case as seventh out of the ten most important decisions for 2004.

[34]The defendants' reliance on *Chemawa Country Golf, Inc.* v. *Wnuk*, 9 Mass. App. Ct. 506 (1980), is misplaced. That case did not concern harm to reputation, but concerned whether damages were demonstrated in an action for wrongful interference with contractual relationships where there was no evidence that a golf club had lost members due to the defendant's actions. *Id.* at 510-511.

[35]The defendants argue that the judge awarded Mahlowitz damages for what he "perceived" to be loss of reputation, without finding that his reputation was in fact tarnished by the Massachusetts Lawyers Weekly publications. Their argument misreads the judge's decision, which acknowledged that the

merit to Mahlowitz's contention that Attorney Peres, who represented Zoppo and Millennium, and Attorney Sinsheimer, who represented Rabinovitz, deliberately ignored the law and facts concerning their respective clients' abuse of process claims against Mahlowitz, in violation of rule 11 (a).[36] The judge did not abuse her discretion in declining to find that either attorney had violated rule 11 (a). *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. 410, 417 (1998) (standard of review for rule 11 [a] determinations is abuse of discretion).

A "wilful violation" of rule 11 (a) may subject an attorney to sanctions if an attorney has failed to show a "subjective good faith belief" that the pleading was supported in both fact and law. *Id.* at 415-416 (distinguishing subjective standard used in Massachusetts from objective standard embodied in amended Federal rule). A court, however, "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* at 418-419, quoting Advisory Committee Note to 1983 Revision to Fed. R. Civ. P. 11, 97 F.R.D. 198 (1983).

In large part, Mahlowitz's appeal from the denial of sanctions rests on the wisdom of hindsight, in this case the eventual findings of the judge that the defendants' action was without merit. We are careful to differentiate between the attorneys' sworn statements and the defendants' improper motivations, recognizing that unless there is evidence to the contrary, a client's improper motivation should not be imputed to his attorney. See *id.* at 418. We agree with the judge that such evidence is lacking here.

Mahlowitz maintains that a more thorough investigation by the attorneys would have uncovered their clients' illegitimate motive in wanting to sue Mahlowitz. But the fact that the judge ultimately disbelieved Peres's and Sinsheimer's clients' testimony

publicity "disparaged" Mahlowitz professionally and "damaged" the esteem to which he was held in the legal community. Although the judge also acknowledged that Mahlowitz perceived that his reputation had been harmed, this negative perception is compensable as emotional distress, and therefore was properly considered.

[36]Attorneys Isaac H. Peres and Robert S. Sinsheimer do not represent the defendants on appeal. They have each submitted a brief, pro se, in support of the judge's decision to deny sanctions pursuant to Mass. R. Civ. P. 11 (a), 365 Mass. 753 (1974).

does not prove that Peres and Sinsheimer had reason to know that the testimony was less than accurate when it was proffered. The link between the clients' wrongful actions and their attorneys' knowledge of it is speculative. We also agree with the judge that the fact that Sinsheimer was retained after Mahlowitz's summary judgment motion on the defendants' claim had been denied supports a finding of subjective good faith on his part.

6. *Conclusion.* We affirm the judgment in favor of Mahlowitz on his counterclaim for abuse of process against each of the defendants and hold that this judgment alone independently supports the judge's award of damages such that we need not reach the issue of malicious prosecution. We affirm the judge's award of damages, but limited to those damages related to the costs incurred by Mahlowitz in defending his claims against the defendants' lawsuit against him, and we remand for an explanation and, if necessary, a recalculation of damages related to emotional distress as described above. Lastly, we affirm the judge's denial of sanctions pursuant to Mass. R. Civ. P. 11 (a). The case is remanded to the Superior Court for further proceedings before the judge who presided at the trial, consistent with this opinion.[37]

*So ordered.*

---

[37]Mahlowitz asserts that he is entitled to an award of appellate fees and costs against Rabinovitz and Zoppo under Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979), because their appeal is frivolous and intended solely for delay. See *Avery* v. *Steele*, 414 Mass. 450, 455 (1993) ("Appellate courts are authorized by statute to award double costs to an appellee in a civil case when the appeal is frivolous, immaterial, or intended for delay"). Although the defendants have not prevailed here, there is no indication that their appeal from a substantial judgment against them is wholly without merit or intended for delay.

Similarly, Mahlowitz's contends he should be awarded appellate attorney's fees pursuant to G. L. c. 231, § 59H (the so-called "anti-SLAPP" statute), because Zoppo and Rabinovitz are challenging an award of legal fees under that statute. Although the judge's rulings on the anti-SLAPP claim were brief, she apparently awarded attorney's fees under that statute in the alternative. Because we have affirmed the award of attorney's fees as damages under Mahlowitz's abuse of process claim, the anti-SLAPP ruling is moot.